ALEXANDER, J., dissenting.
[¶ 18] I respectfully dissent.
[¶ 19] Medical malpractice actions are commenced by a filing of a notice of claim in the Superior Court. 24 M.R.S. § 2853(1) (2017). Those actions have a medical malpractice screening panel phase, *1179 24 M.R.S. §§ 2854 - 2858 (2017), but they remain actions pending before the Superior Court. Because the parties addressed the question thoroughly with the Superior Court, and the Superior Court entered a detailed order on the discovery issue, I would not determine the order to have lost its vitality, notwithstanding the serious question of relevance given that the panel proceeded without the evidence at issue. I would reach the merits and vacate the order.
[¶ 20] That discovery order authorizes Dorothea McCain and her attorneys to launch a discovery fishing expedition, reviewing the medical records of at least thirty other innocent, unrelated individuals who have undergone similar procedures performed by the defendants. Knowledge that we have not addressed the merits of this order may invite others to launch similar fishing expeditions, hoping to bolster a client's case by prying into the private medical records of perhaps hundreds of innocent, unaware individuals.
[¶ 21] The Superior Court's order authorizes review of records of unnamed and unnotified patients in violation of those patients' constitutional rights to privacy, in violation of privileges established in our Rules of Evidence, and in violation of numerous state and federal statutes mandating the privacy of patient identities and the confidentiality of medical records. See infra ¶30.
[¶ 22] Vanadia, his medical practice, and the hospital where the procedure was performed all have standing to assert the constitutional rights to privacy, the privileges against disclosure of communications relating to medical treatment, and the statutory rights of privacy and confidentiality on behalf of the unidentified and otherwise defenseless patients whose records are sought in this matter. See Field & Murray, Maine Evidence § 503.3 at 227 (6th ed. 2007).
[¶ 23] Turning to the merits of the appeal, we have not yet addressed the question presented here: whether an individual claiming improper treatment by a medical provider may obtain access to records of other patients who have received similar treatment from that medical provider to determine if those other patients' records might contain information to support the plaintiff's action. The implications of the Superior Court's ruling for patients and the medical community that serves those patients are vast.
[¶ 24] Even though the Superior Court's order has become ineffective as a result of the Court's determination that it is a nullity, the ruling remains unchanged. Therefore, that precedent, preliminary as it is, may serve as an invitation for others to seek the records of other patients to see what might be in those records to help the complainants' cases. Sometimes the invasion of rights of privacy and confidentiality of only a few patients may be involved, other times, with more common procedures, hundreds of records of other patients may be sought.
[¶ 25] Once the door is opened, access to other patients' records may be obtained by complainants unhappy with all manner of treatments including, as a few examples, abortions, HIV infection therapies, or substance abuse treatments.
[¶ 26] The plaintiff argues that the identities of the other patients would be protected by redacting the patient information to which they may have access. How those records would be redacted, by whom, and who would pay the costs for recovery, review, and redaction of perhaps thousands of pages of electronic patient records is unclear. The inquiring party likely would have to see the records to ensure that she gets the information that a court has ordered that she shall have.
*1180 [¶ 27] As the treatment at issue necessarily would be identified in any records reviewed and provided, the likelihood of actual confidentiality of identification of patients, at least in smaller Maine communities where only a few treatments may be provided per year, would be uncertain.
[¶ 28] The example presented by this case is particularly troubling. The plaintiff is seeking access to the medical records of fifteen as yet unidentified patients who received similar treatment before the plaintiff's treatment and the medical records of fifteen as yet unidentified patients who received similar treatment after the plaintiff's treatment. Review of the limited information in the file suggests that potentially identifying information related to each patient's physical characteristics and health conditions may be important in determining if other patients' records are relevant to the claim of negligence for identifying and cutting the wrong duct.
[¶ 29] The records that the trial court has ordered to be disclosed regarding patients who received treatments after the plaintiff's treatment might only be relevant on a narrow credibility question. That question would be whether, after the plaintiff's treatment, the medical provider engaged in subsequent remedial measures, see M.R. Evid. 407,[3] to create the medical records-not the treatments but the medical records-to reflect differently how events during the procedure were reported.
[¶ 30] There are several statutes and rules that the trial court's mandate to disclose other patients' records may violate:
• Title 42 U.S.C.S. § 1320d-6 (LEXIS through Pub. L. No. 115-185) of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and implementing regulations published at 45 C.F.R. pts. 160 and 164 (2017), paint with a very broad brush, mandating privacy of patient-specific medical information and confidentiality of medical records. The statute and implementing regulations are voluminous and complicated. No exception to the mandated privacy and confidentiality is apparent that would authorize an individual dissatisfied with medical treatment to discover the redacted or unredacted medical records of others who have received similar treatments to determine if those records might include some information to support a negligence claim.
• The Maine statute entitled "[c]onfidentiality of health care information," 22 M.R.S. § 1711-C (2017), provides similar protection for patient privacy and the confidentiality of medical records. "An individual's health care information is confidential and may not be disclosed other than to the individual by the health care practitioner or facility except as provided in subsection 3, 3-A, 3-B, 6 or 11." Id. § 1711-C(2). None of the listed subsections authorize the court mandated access to individuals' medical records at issue here.
• Other state statutes limiting access to medical records regarding physical health conditions by persons other than the person being treated and their treatment providers include 5 M.R.S. §§ 200-E, 4572(2) and 4573(2) (2017). These statutes may apply to protect the medical records of one or *1181 more of the individuals whose medical records the plaintiff seeks in this case. Many other statutes limiting disclosure of records relating to mental health conditions may also apply to some medical records the plaintiff seeks. See, e.g. , 1 M.R.S. § 402 (2017) ; 34-A M.R.S. § 1216 (2017) ; 34-B M.R.S. § 1207 (2017).
• Maine Rule of Evidence 503 gives individual patients a privilege to refuse to disclose confidential communications made for the purpose of diagnosing or treating medical conditions. Such communications are indicated in McCain's medical record, which she asserts are similar to the records of other patients that she wants to access.
[¶ 31] The briefs of the parties cite to many opinions from other jurisdictions that reach differing results on whether plaintiffs in medical negligence actions may discover the medical records of other patients who have had similar procedures or have been treated by the same medical professional or facility. Some of those opinions indicate that if the medical records sought are "redacted"-whatever that means-then the requested discovery of other patients' medical records will be allowed. See, e.g. , Staley v. Jolles , 230 P.3d 1007, 1013 (Utah 2010). Few of those opinions indicate how, or by whom, or at what cost, record search, review, and redaction will be accomplished. And few of those opinions seem to consider how easily a person may be identified by descriptive information in a record, even if the specific identifying information has been removed.
[¶ 32] The contrary opinions of other jurisdictions refusing to allow discovery of other patients' records to see if they might contain evidence that might support a particular plaintiff's claim have the better argument. See, e.g. , Roe v. Planned Parenthood Sw. Ohio Region , 122 Ohio St.3d 399, 912 N.E.2d 61, 71 (2009) ("Redaction of personal information ... does not divest the privileged status of confidential records. Redaction is merely a tool that a court may use to safeguard the personal, identifying information within confidential records that have become subject to disclosure either by waiver or by an exception.").
[¶ 33] Open-ended fishing expedition discovery, invading other patients' privacy and authorizing review of confidential medical records to see if those records contain information that might support an individual plaintiff's medical negligence claim, violates M.R. Evid. 503 and violates federal and state statutes mandating patient privacy and the confidentiality of patients' medical records. We should reach the merits of this appeal applying exceptions to the final judgment rule. Reaching the merits, for the reasons discussed above, we should vacate the Superior Court's discovery order so that it cannot be enforced in pretrial discovery to mandate disclosure of other patients' confidential medical records potentially leading to use of those records in a public trial.

Pursuant to M.R. Evid. 407, evidence of subsequent remedial measures is inadmissible to prove negligence and culpability. Neither the trial court nor the plaintiff have addressed in any detail how the ordered discovery of other patients' records created after the plaintiff's treatment would lead to the development of admissible evidence.