Lundberg Stratton, J.
{¶ 1} The primary issue before us is whether the plaintiffs-appellants, John and June Roe, individually and as parents of Jane Roe, a minor, are entitled to discover confidential abuse reports and medical records of nonparties in a private action for damages. A related predicate issue is whether a plaintiff is entitled to *400 seek punitive damages for a breach of the duty to report suspected child abuse under former R.C. 2151.421, 2006 Sub.S.B. No. 238.
{¶ 2} The confidential abuse reports and medical records at issue are privileged from disclosure per R.C. 2317.02 and former 2151.421(H)(1). Redaction of personal, identifying information does not remove the privileged status of the records. Therefore, the reports and medical records are not subject to discovery pursuant to Civ.R. 26(B)(1).
{¶ 3} We hold that the balancing test in Biddle v. Warren Gen. Hosp. (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, applies only as a defense to the tort of unauthorized disclosure of confidential medical information and does not create a right to discover confidential medical records of nonparties in a private lawsuit.
{¶ 4} In addition, we also hold that R.C. 2151.421(M) affects a substantive right and its retroactive application would violate due process and that, in the absence of statutory authority, there is no right to recover punitive damages under former R.C. 2151.421. Therefore, albeit for different reasons, we affirm the judgment of the court of appeals.
Facts and Procedural History
{¶ 5} The Roes filed this action against Planned Parenthood Southwest Ohio Region and others (collectively, “Planned Parenthood”) alleging that Planned Parenthood illegally performed an abortion on their 14-year-old daughter, Jane. The Roes alleged that Planned Parenthood failed to notify them or to secure their consent in advance of the procedure and failed to obtain Jane’s informed consent to the procedure in violation of R.C. 2919.121, 2919.12, and 2317.56. The Roes also alleged that Planned Parenthood breached its duty to report suspected child abuse of Jane in violation of former R.C. 2151.421. The plaintiffs sought compensatory and punitive damages and injunctive relief.
{¶ 6} In the fall of 2003, when Jane was 13 and in the eighth grade, she began a sexual relationship with her 21-year-old soccer coach, John Haller. In March 2004, Jane discovered that she was pregnant and told Haller. Haller convinced Jane to have an abortion. He called Planned Parenthood and attempted to schedule an abortion for her. Planned Parenthood told Haller that he could not schedule the procedure and that Jane would have to make the appointment. After this conversation, Haller told Jane to schedule it, and he also instructed her that if asked to provide a parent’s telephone number, she should give Planned Parenthood his cell phone number in lieu of her father’s phone number.
{¶ 7} Jane called Planned Parenthood and told an employee that she was 14 years old and that her parents could not accompany her. She asked whether her “stepbrother” could come with her. The employee asked whether Jane’s parents knew about her pregnancy. Jane lied and told the employee that one or both of *401 her parents knew. In fact, neither knew. Jane gave the employee her father’s correct name and address, but she lied twice more, telling the employee that her father did not have a home phone number and then giving Haller’s cell phone number as her father’s phone number.
{¶ 8} Planned Parenthood scheduled the abortion for March 30, 2004. The employee told Jane that someone would have to stop at Planned Parenthood to pick up an information packet but that Jane did not have to personally retrieve the packet. Sometime before the procedure, Haller picked up the information packet for Jane.
{¶ 9} The Roes alleged that they do not know whether Planned Parenthood called or attempted to call the cell phone that belonged to Haller or, if it did, whether Planned Parenthood ever spoke to Haller. Planned Parenthood, on the other hand, presented evidence at a hearing that Jane had admitted that Planned Parenthood had called Haller’s cell phone number and that Haller had pretended to be Jane’s father and had authorized the procedure.
{¶ 10} Planned Parenthood also produced the parental-notification form filled out by the doctor who performed the procedure. The form indicated that the doctor had telephonically notified parent John Roe that Jane Roe was scheduled for an abortion at Planned Parenthood “no sooner than 24 hours from the time” the notice was given.
{¶ 11} Haller drove Jane to the clinic on the day of the procedure. When they arrived, a Planned Parenthood employee requested identification. Jane presented her school-identification card, and Haller provided his Ohio driver’s license. They submitted the forms that Jane had filled out to an employee, who noted that Jane Roe’s “brother John — [was] here today.” Haller paid with a credit card.
{¶ 12} Before the procedure, Jane signed a form that set forth the nature and purpose of, and the medical risks associated with, the procedure. One form she signed stated that Planned Parenthood had met its statutory obligation to obtain the patient’s informed consent. The Roes alleged that even if Jane had been fully informed, her age and emotional state precluded her from comprehending and understanding the risks associated with the procedure. The Roes also alleged that Jane’s consent had not been given in a knowing, voluntary, or intelligent manner and that it had been procured under duress and coercion.
{¶ 13} Haller ended the relationship soon afterward. After the breakup, a teacher overheard an argument between Jane and Haller’s sister, a classmate of Jane’s, about Haller and his relationship with Jane, including references to Jane’s sexual relationship with Haller. The teacher reported the suspected sexual abuse to the police. After a criminal investigation, Haller was convicted of seven counts of sexual battery. A criminal investigation was also conducted into Planned *402 Parenthood’s culpability, but the Hamilton County prosecutor did not prosecute Planned Parenthood for any statutory violation.
{¶ 14} After the Roes filed their lawsuit, they sought discovery from Planned Parenthood, including any reports of abuse made pursuant to R.C. 2151.421 and the medical records of nonparty minors who had been patients at Planned Parenthood during a ten-year period. Planned Parenthood produced Jane’s medical records but refused to provide the confidential records of nonparties on the basis of the physician-patient privilege.
{¶ 15} The plaintiffs moved to compel discovery. Planned Parenthood moved for a protective order to prevent disclosure. The trial court followed Richards v. Kerlakian, 162 Ohio App.3d 823, 2005-Ohio-4414, 835 N.E.2d 768, ¶ 5, which cited Biddle for the proposition that confidential information may be discoverable to further a countervailing interest that outweighs the nonparty patient’s interest in confidentiality.
{¶ 16} The trial court concluded that the Roes had a “tremendous interest” in the requested documents and that their need for the information outweighed the nonparty patients’ interest in maintaining the confidentiality of their records. The court ordered all patient-identifying information redacted from the records produced. The court granted the plaintiffs’ motion to compel and overruled the defendants’ motion for a protective order. The court did not specifically analyze the claims for punitive damages.
{¶ 17} The court of appeals reversed. Roe v. Planned Parenthood Southwest Ohio Region, 173 Ohio App.3d 414, 2007-Ohio-4318, 878 N.E.2d 1061. The appellate court, citing both Biddle and Richards for the proposition that “only where the privileged information is necessary to further or protect a countervailing interest is disclosure proper,” concluded that the confidential abuse reports and medical records of nonparties were not necessary to the Roes’ case and, even if tenuously necessary, the potential invasion of the privacy rights of the nonparties outweighed the probative value of the records to this case. Id. at ¶ 34, 42^4. The court concluded that R.C. 2151.421, which imposes the duty to report abuse, does not provide for punitive damages. Thus, the Roes’ claim for punitive damages based on this statute had no merit. Id. at ¶ 37.
{¶ 18} After having initially declined jurisdiction, upon reconsideration, we accepted jurisdiction of this discretionary appeal on Proposition of Law Nos. II, IV, V, and VI. Roe v. Planned Parenthood Southwest Ohio Region, 117 Ohio St.3d 1443, 2008-Ohio-1279, 883 N.E.2d 459.
Postargument Procedure
{¶ 19} Following oral argument in this matter on October 7, 2008, counsel for the Roes filed a citation to additional authority, i.e., recently enacted 127 *403 Am.Sub.H.B. No. 280 (“H.B. 280”), which amended R.C. 2151.421. On April 3, 2009, we ordered the parties to brief the following issue:
{¶ 20} “Do the provisions of 127 Am.Sub.H.B. 280 (effective April 7, 2009) apply to this case and, if so, what effect do those provisions have on the issues in this case?” Roe v. Planned Parenthood Southwest Ohio Region, 121 Ohio St.3d 1434, 2009-Ohio-1619, 903 N.E.2d 1218.
The Roes’ Claims
{¶ 21} The Roes have alleged that Planned Parenthood breached its duties under R.C. 2919.12 and 2919.121 by failing to notify them of the intent to perform an abortion on Jane and failing to obtain their consent to perform the procedure. R.C. 2919.12 prohibits any person from performing an abortion upon a pregnant, unmarried woman under age 18 without giving at least 24 hours’ actual notice in person or by telephone to the woman’s parents or obtaining a parent’s written consent. R.C. 2919.121 prohibits a person from performing an abortion upon a pregnant minor without the written consent of the minor and one parent.[1] Both statutes provide that one who violates this statute may be liable for compensatory and punitive damages.
{¶ 22} The Roes also alleged that Planned Parenthood performed the procedure on Jane without first obtaining her informed consent in violation of R.C. 2317.56. The statute requires that at least 24 hours prior to the procedure, a physician meet with the pregnant woman in person and that published materials about the procedure be given to her. It also requires that she give written consent to the procedure. A person who fails to comply may be liable in compensatory and punitive damages.
{¶ 23} The Roes further alleged that Planned Parenthood had reason to suspect that Jane was sexually involved with an adult, but that it did not report the relationship, in violation of R.C. 2151.421. They alleged that as matter of policy and/or pattern and practice, Planned Parenthood does not report known or suspected child abuse with respect to the minors to whom it provides medical services.
*404 {¶ 24} The Roes asked the court to enjoin Planned Parenthood from further statutory violations and to require it to comply with the law, and they have asked for compensatory and punitive damages.[2]
Discovery Sought
{¶ 25} The Roes sought statistical data from Planned Parenthood about the number of abortions performed and the number of reports of suspected or known sexual abuse made over a ten-year period. They also sought the abuse reports made pursuant to R.C. 2151.421 and the redacted medical records of minors who were patients at Planned Parenthood but who are not parties to the action.
{¶ 26} The Roes do not dispute that they are seeking confidential, privileged information of third parties, but claim that redaction removes the confidential status. They admit that the statistics are published and available from other sources.[3] This dispute centers solely upon the Roes’ request for the abuse reports and medical records of third persons who are not parties. See former R.C. 2151.421(H)(1) (confidentiality of child-abuse reports) and R.C. 2317.02(B)(1) (“A physician or a dentist [shall not testify] concerning a communication made to the physician or dentist by a patient in that relation or the physician’s or dentist’s advice to a patient, except as otherwise provided * * * ”).
{¶ 27} Civ.R. 26(B)(1) permits discovery “regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.” (Emphasis added.) The information sought need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. Id. The Roes contend that the documents they seek are relevant and necessary to their claims and are otherwise unavailable.
{¶ 28} Civ.R. 26 clearly excludes privileged information from the general rule of discovery. Thus, even assuming that the information the Roes seek is relevant and may lead to the discovery of admissible evidence, they must establish an exception to the privilege in order to discover this information; relevancy itself is not sufficient for purposes of discovery under Civ.R. 26 when matters are privileged. The Roes rely on Biddle v. Warren Gen. Hosp., 86 Ohio St.3d 395, 715 N.E.2d 518, as authority to discover the medical records of nonparties if a plaintiffs need for the records outweighs the nonparties’ interest in protecting the confidential nature of the records.
*405 {¶ 29} Because this case involves discovery of confidential and privileged information, we review the matter de novo. Med. Mut. of Ohio v. Schlotterer, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13.
Application of H.B. 280
{¶ 30} As a preliminary matter, we address the postargument briefs and whether H.B. 280 may apply retroactively in this case.
{¶ 31} The Roes’ first proposition of law asserts that a plaintiff is entitled to seek punitive damages for a defendant’s systematic and intentional breach of the duty to report suspected abuse under R.C. 2151.421. The Roes have requested the abuse reports from Planned Parenthood to establish their claim for punitive damages.
{¶ 32} R.C. 2151.421 places a duty on persons with special relationships to minors to report suspected or known abuse or neglect. In December 2008, the General Assembly enacted H.B. 280, which amended R.C. 2151.421, adding division (M) and supplementing division (H), both of which may affect the outcome of this case if applied retroactively. R.C. 2151.421(M) provides that a person may be liable for compensatory and exemplary damages for violating the reporting requirements, and a person who brings a civil action pursuant to division (M) may use reports of other incidents of known or suspected abuse or neglect, with identifying information redacted, in that civil action. R.C. 2151.421(H)(1) was supplemented to allow the use of confidential abuse reports made under that division in a civil action brought pursuant to section (M).
{¶ 33} To determine whether R.C. 2151.421(H) and (M) may be retroactively applied in this matter, we apply a two-part analysis. Ackison v. Anchor Packing Co., 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 12. The first part examines whether the General Assembly intended for the statute to apply retroactively. Id. If so, the second part requires that we determine whether the amendments are substantive, a status that would render them unconstitutionally retroactive, or merely remedial. Id., ¶ 13, citing Bielat v. Bielat (2000), 87 Ohio St.3d 350, 353, 721 N.E.2d 28.
{¶ 34} In this case, the General Assembly expressly provided that the amendments were intended to apply retroactively to civil actions pending on the effective date of the act, April 7, 2009. H.B. 280, Section 4. Thus, they meet the threshold inquiry of retroactivity. We next consider whether the amendments are substantive or remedial. We have held that substantive law “impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.” Bielat, 87 Ohio St.3d at 354, 721 N.E.2d 28. Procedural or remedial law prescribes methods of *406 enforcement of rights or obtaining redress. French v. Dwiggins (1984), 9 Ohio St.3d 32, 34, 9 OBR 123, 458 N.E.2d 827.
{¶ 35} Former R.C. 2151.421 made no reference to any civil damages for violating the statute. Division (M) now provides:
{¶ 36} “Whoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made.”
{¶ 37} The newly enacted division (M) adds a punitive measure of damages that did not previously exist. It does not merely clarify and confirm that a plaintiff had available both compensatory and exemplary damages for a common-law violation of the statute as the Roes contend. Instead, such a change is akin to a statutory penalty, which is substantive. Osai v. A D Furniture Co. (1981), 68 Ohio St.2d 99, 100, 22 O.O.3d 328, 428 N.E.2d 857. Thus, we hold that R.C. 2151.421(M) affects a substantive right, and its retroactive application would violate due process.
{¶ 38} Former R.C. 2151.421(H)(1) provided that except in limited situations that do not apply here, reports of child abuse made pursuant to R.C. 2151.421 are confidential. H.B. 280 created an exception to nondisclosure by allowing the use of abuse reports in a civil action brought pursuant to R.C. 2151.421(M), provided that any identifying information about the child who is the subject of the report is redacted. Because division (M) may not be retroactively applied in this case, it follows that the Roes may not rely on the discovery provisions of (H)(1), because they apply only to civil actions brought pursuant to division (M). Therefore, we must apply the version of R.C. 2151.421 in effect when the Roes’ cause of action arose to determine whether a plaintiff is entitled to seek punitive damages for a defendant’s failure to report suspected abuse.
Availability of Punitive Damages under Former R.C. 2151.421
{¶ 39} Former R.C. 2151.421 made no reference to any civil damages for a violation of the statute. The Roes contend that the absence of any mention of damages does not preclude the availability of punitive damages. They argue that this court’s interpretation of the word “liability” in Campbell v. Burton (2001), 92 Ohio St.3d 336, 341-342, 750 N.E.2d 539, to include civil and criminal liability, coupled with the interpretation of “damages” in Rice v. CertainTeed Corp. (1999), 84 Ohio St.3d 417, 419-420, 704 N.E.2d 1217, as including both compensatory and punitive damages, entitles them to seek all legally recognized relief. They also contend that courts have permitted plaintiffs to seek both compensatory and punitive damages under Section 1983, Title 42, U.S.Code, although punitive damages are not specified in that statute.
*407 {¶ 40} In Campbell v. Burton, this court broadly construed the word “liability” in R.C. 2744.02(B)(5) and 2744.03(A)(6)(c) and determined that a political subdivision and its employee could not claim immunity from liability under the Political Subdivision Tort Liability Act for the failure to perform a duty imposed by R.C. 2151.421. Id., 92 Ohio St.3d 336, 750 N.E.2d 539, paragraphs one, two, and three of the syllabus. Campbell held that a political subdivision and its employee may be held liable for a violation of R.C. 2151.421, but it did not discuss damages.
{¶ 41} In Rice v. CertainTeed Corp., 84 Ohio St.3d at 421, 704 N.E.2d 1217, we held that R.C. 4112.99 authorizes an award of punitive damages in a civil employment-discrimination action arising under R.C. 4112.02. R.C. 4112.99 provides for “a civil action for damages, injunctive relief, or any other appropriate relief.” We concluded that this language includes punitive damages. Rice, 84 Ohio St.3d at 421, 704 N.E.2d 1217.
{¶ 42} Campbell addressed liability only, and its interpretation has since been limited to civil liability only ivhen expressly imposed by a section of the Revised Code. See R.C. 2744.02 and 2744.03, 149 Ohio Laws, Part II, 3500, 3508, 3510, effective April 9, 2003. Rice interpreted a statute that authorized damages. Here, former R.C. 2151.421 is silent as to any damages. We cannot insert words into a statute. Instead, we must give effect only to the words used. Rice, 84 Ohio St.3d at 419, 704 N.E.2d 1217. The General Assembly did not include a provision for civil damages in the former version of the statute, much less punitive damages. Without express authority for such an award, we are constrained by the statutory language. O’Toole v. Denihan, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 67.
{¶ 43} Furthermore, there can be no award of punitive damages for violating a statutory duty that did not exist at common law unless the award is expressly authorized by statute. Kleybolte v. Buffon (1913), 89 Ohio St. 61, 66, 105 N.E. 192. There was no common-law duty to report child abuse. The statute that created the duty does not authorize any damages for its breach. Therefore, we hold that in the absence of statutory authority, punitive damages are not available under former R.C. 2151.421.
Discovery of Child Abuse Reports per R.C. 2151.421
{¶ 44} R.C. 2151.421(H)(1) provides for “the use of reports of other incidents of known or suspected abuse or neglect in a civil action or proceedings brought pursuant to division (M) of this section.” There is no exception for discovery in other types of civil actions. Because we have determined that division (M) may not be retroactively applied, the Roes do not have a civil action pursuant to division (M), and they may not rely on amended (H)(1) to discover and use reports of other incidents of abuse in this action.
*408 {¶ 45} Thus, we look to former R.C. 2151.421(H), which makes no exception for discovery of abuse reports for this kind of civil action. In addition, to the extent that the abuse reports contain information obtained within the physician-patient relationship, that information is privileged from disclosure. This case does not fit within the exception to the physician-patient privilege involving “a child’s injuries, abuse, or neglect * * * in any judicial proceeding resulting from a report submitted pursuant to this section.” R.C. 2151.421(G)(1)(b). Because this case does not arise from a report submitted about Jane, R.C. 2151.421(G)(1)(b) does not apply. Consequently, these abuse reports are confidential pursuant to former R.C. 2151.421(H) and are not discoverable in this case.
Discovery of Confidential Records of Third Parties
{¶ 46} The Roes also seek medical records of nonparties. In general, medical records are confidential and not subject to disclosure. Hageman v. Southwest Gen. Health Ctr., 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, ¶9. The' Roes rely on Biddle, 86 Ohio St.3d 395, 715 N.E.2d 518, as authority for discovery of the confidential medical records of nonparties because “disclosure is necessary to protect or further a countervailing interest that outweighs the patient’s interest in confidentiality.” Id. at paragraph two of the syllabus.
{¶ 47} Biddle was a tort case in which we addressed liability for unauthorized disclosure and stressed the utmost importance of the patient’s right to confidentiality of medical communications. Id., 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph one of the syllabus. Biddle did not involve discovery of documents, but rather the improper release of documents. Nevertheless, apparently litigants have used Biddle to seek nonparty confidential medical information, and courts in several types of tort cases have interpreted Biddle as creating a right to obtain nonparty confidential medical information. See Fair v. St. Elizabeth Med. Ctr. (2000), 136 Ohio App.3d 522, 527, 737 N.E.2d 106; Richards v. Kerlakian, 162 Ohio App.3d 823, 2005-0hio-4414, 835 N.E.2d 768, ¶ 5; Alcorn v. Franciscan Hosp. Mt. Airy Campus, Hamilton App. No. C-060061, 2006-Ohio-5896, 2006 WL 3231208, ¶ 17; Cepeda v. Lutheran Hosp., Cuyahoga App. No. 90031, 2008-Ohio-2348, 2008 WL 2058588, ¶ 15.
{¶ 48} However, paragraph two of the syllabus in Biddle addressed the defenses to the tort of unauthorized disclosure of confidential medical information — i.e., the circumstances under which a physician or hospital may release confidential medical records in the absence of a waiver without incurring tort liability. Biddle did not create a litigant’s right to discover the confidential medical records of nonparties in a private lawsuit. Any such exception to the physician-patient privilege is a matter for the General Assembly to address. See Jackson v. Greger, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 13 (“this *409 court * * * has consistently rejected the adoption of judicially created waivers, exceptions, and limitations for testimonial privilege statutes”).
{¶ 49} The Roes also argue that the trial court ordered all patient-identifying information redacted, so the anonymity of the patients will be retained, and the confidential and privileged nature of the documents will be removed. Redaction of personal information, however, does not divest the privileged status of confidential records. Redaction is merely a tool that a court may use to safeguard the personal, identifying information within confidential records that have become subject to disclosure either by waiver or by an exception. See R.C. 2317.02(B)(1)(d).
{¶ 50} Here, the Roes seek confidential information of third parties that is privileged from disclosure. R.C. 2151.421(H)(1) and 2317.02. Because Biddle applies as a defense to the tort of unauthorized disclosures of confidential medical information, we hold that Biddle does not authorize the Roes to discover the confidential medical records of nonparties from Planned Parenthood.
{¶ 51} The Roes and amici curiae assert that this discovery will further Ohio’s public policy in protecting children. We note, however, that this case is about Planned Parenthood’s alleged violation of duties as to Jane Roe only. The Roes have not filed a class action on behalf of other alleged victims. The case has no criminal implications: Haller has already been convicted of the crimes, and the prosecutor has investigated but declined to pursue criminal charges against Planned Parenthood.
{¶ 52} To the extent that the Roes and various amici curiae also advance public policy arguments in support of disclosure of confidential medical records, whether such public policy issues are sufficient to overcome a nonparty patient’s right to the confidentiality of medical information should likewise be addressed by the General Assembly, not the judiciary. The General Assembly has addressed the Roes’ concerns about the reporting of child abuse; however, those changes in the law apply prospectively.
Conclusion
{¶ 53} The confidential abuse reports and medical records at issue are privileged from disclosure per R.C. 2317.02 and former 2151.421(H)(1). Redaction of personal, identifying information does not remove the privileged status of the records. Therefore, the reports and medical records are not subject to discovery pursuant to Civ.R. 26(B)(1).
{¶ 54} Biddle, followed by Hageman, 119 Ohio St.3d 185, 2008-Ohio-3343, 893 N.E.2d 153, addressed improper disclosure without prior authorization and emphasized a patient’s right to the privacy of medical information. Id. at ¶ 17. Biddle addressed the privilege to disclose confidential medical information in the *410 context of a defense to the tort of unauthorized disclosure. Biddle does not create the right to discover the confidential medical records of nonparties in a private lawsuit.
(¶ 55} The Roes still may pursue their private claims for damages against Planned Parenthood for statutory violations: whether Planned Parenthood performed an unlawful abortion on Jane under R.C. 2919.12 and 2919.121, which authorize an award of punitive damages, whether Jane’s consent was proper under R.C. 2317.56, which authorizes an award of punitive damages, and whether it had a duty to report suspected abuse of Jane under former R.C. 2151.421. The Roes are entitled to discover Jane’s own medical records. They may pursue discovery of other matters, not privileged, that are relevant and reasonably calculated to lead to the discovery of admissible evidence. Therefore, for the foregoing reasons, we affirm the judgment of the court of appeals.
Judgment affirmed.
Moyer, C.J., and Lanzinger and Cupp, JJ., concur.
Pfeifer, J., concurs separately.
O’Donnell, J., concurs in part and dissents in part.
Donovan, J., dissents.
Mary E. Donovan, J., of the Second Appellate District, sitting for O’Connor, J.

. R.C. 2919.121 was enacted in 1998. 147 Ohio Laws, Part II, 3868, 3875. Shortly afterward, a lawsuit was filed in federal court that challenged its constitutionality. The court issued an order that enjoined the state and county from enforcing the new statute while the case was pending. Cincinnati Women’s Serv., Inc. v. Taft (S.D.Ohio 2005), 466 F.Supp.2d 934, 937. Since then, the Sixth Circuit has upheld the provision that required 24-hour informed consent, but severed the provision that limited a minor to filing one petition for a judicial bypass of parental consent per pregnancy. Cincinnati Women’s Serv., Inc. v. Taft (C.A.6, 2006), 468 F.3d 361.

. The Roes voluntarily dismissed their causes of action for conspiracy and intentional infliction of emotional distress.

. According to the Roes, Planned Parenthood publishes statistical data on the number of abortions performed and the number of abuse reports made in annual reports and disseminates the information to the Ohio Department of Health and Planned Parenthood Federation of America.