[Cite as *Yost v. Schaffner*, 2020-Ohio-5127.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| DAVE YOST, ATTORNEY GENERAL OF OHIO | JUDGES: Hon. W. Scott Gwin, P. J. Hon. John W. Wise, J. Hon. Earle E. Wise, Jr., J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 19 CA 000030 |
| DAVID K. SCHAFFNER, et al. | |
| Defendants-Appellants | O P I N I O N (NUNC PRO TUNC) |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Case No.  16 CV 000335

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    October 30, 2020

APPEARANCES:

For Plaintiff-Appellee

THADDIUS A. TOWNSEND
ASSISTANT ATTORNEY GENERAL
150 East Gay Street
23rd Floor
Columbus, Ohio  43215

For Plaintiff-Appellee Guernsey

ERIK A. SCHRAMM
KYLE W. BICKFORD
HANLON, ESTADT, MCCORMICK
& SCHRAMM CO., LPA
46457 National Road West
St. Clairsville, Ohio  43950

For Defendants-Appellants

CRAIG G. PELINI
WILLIAM M. SHACKELFORD
PAUL B. RICARD
PELINI, CAMPBELL, & WILLIAMS, LLC
8040 Cleveland Avenue, NW, Suite 400
North Canton, Ohio  44720

*Wise, John, J.*

{¶1}   Defendants-Appellants David K. Schaffner And Schaffner Law Offices, Co., LPA, appeal the decision of the Guernsey County Court of Common Pleas denying their Motion to Quash Subpoena and Motion for Protective Order related to Appellants' IOLTA records.

{¶2}   Appellee is the Intervenor Plaintiff Ohio Attorney General. The original Plaintiff in this action was the Guernsey County Community Development Group.

## STATEMENT OF THE FACTS AND CASE

{¶3}   This matter involves the conversion of assets from a non-profit charitable corporation in Guernsey County, Ohio.

{¶4}   For purposes of this appeal, the relevant facts and procedural history are as follows:

{¶5}   It is undisputed that between 2010 and 2016, Defendants-Appellants David K. Schaffner and Schaffner Law Offices, Co., LPA, handled more than ten million dollars belonging to the Guernsey County Community Development Corporation (GCCDC), a non-profit charitable corporation, which it deposited into its IOLTA account. These funds consisted mainly of revenue from oil and gas leases.

{¶6}   The CDC's former board members denied having knowledge of the IOLTA activity and further denied that they and the Schaffner Defendants negotiated the deals resulting in the deposit of oil and gas revenue into the IOLTA. The Schaffner Appellants denied having knowledge of and involvement in the deals precipitating the receipt of revenue into the IOLTA, but they did not deny that they had possession and control of the revenue.

**{¶1}** Prior to the filing of the Complaint in this matter, the GCCDC engaged the services of Attorney Mark Stubbins and a forensic accountant from Perry & Associates with regard to an investigation concerning the conversion of assets by its former executive director, former legal counsel, and former board members through various fraudulent and intentional schemes, including but not limited to: self-serving real estate and oil and gas transactions, and the conversion of millions of dollars for fraudulent "equipment" purchases.

**{¶2}** On May 9, 2016, former legal counsel, the Schaffner Appellants, produced a purported IOLTA account ledger to Attorney Stubbins. The ledger was subsequently provided to Perry & Associates for review. The ledger contained a number of inaccuracies, including duplicative check numbers, missing check numbers, and negative balances.

**{¶3}** On February 2, 2018, the Guernsey County Community Development Group (GCCDC) filed its Amended Complaint against its former Executive Director Daniel L. Speedy, and his spouse, Dora Speedy; former counsel David K. Schaffner and Schaffner Law Offices Co., LPA; Ohio limited liability companies formed by Defendants Daniel L. Speedy, David K. Schaffner, and/or former Board President Steve Allen, being One Percent, LLC, Monster Management, LLC, Whispering Pines, LLC, Synergy Land Company, LLC, and Homestead Utica, LLC; Defendant Kimberly Allen, the spouse of former Board President Steve Allen (deceased), and member of Defendant Homestead Utica, LLC; and former Board Members Gerald Leister, Bonnie Braden, Robert E. Oakley, Frank Fleischer, and Kenneth Hill. The GCCDG attached the IOLTA ledger to its Amended Complaint.

**{¶4}** In said Complaint, the GCCDC alleged intentional and fraudulent acts on behalf of the Schaffner Defendants, which included claims of civil conspiracy, civil RICO, conversion, fraud, and breach of fiduciary duty. Notably, Defendant David K. Schaffner's role as a member of Defendants Whispering Pines, LLC, and Synergy, LLC, do not involve the provision of legal services to the GCCDC in any capacity.

**{¶5}** On September 20, 2018, the Ohio Attorney General, through its Charitable Law Section, subsequently intervened as a Plaintiff, and filed its Amended Complaint against Defendants Daniel Speedy, Dora Speedy, One Percent, LLC, Monster Management, LLC, and Kimberly Allen.

**{¶6}** In its brief, the GCCDC stated that it and the Ohio Attorney General have been working together on discovery cooperatively in an attempt to reduce costs and duplication of efforts, and to ensure coordination where the claims align.

**{¶7}** During discovery, questions arose as to the whereabouts of millions of dollars belonging to the GCCDC and why those funds were or had been in Atty. Schaffer's IOLTA account.

**{¶8}** In anticipation of Atty. David Schaffer's deposition, the Attorney General subpoenaed bank records from First Federal Community Bank, NA, including as bank statements, canceled checks, account application records, deposit tickets, and wire transfer records. First Federal did not file or serve written objections to the subpoena.

**{¶9}** On August 19, 2019, the Schaffner Defendants filed a Motion to Quash Subpoena and for a Protective Order, arguing that the bank records contain "financial information relating to clients … in regards to the legal services provided."

**{¶10}** By Order filed September 11, 2019, the trial court denied the motion.

{¶11} On October 3, 2019, Appellants filed a motion to stay enforcement of the subpoena, which the trial court granted.

{¶12} Appellants assign the following error for review:

**ASSIGNMENT OF ERROR**

{¶13} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANTS-APPELLANTS' MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER RELATED TO DEFENDANTS-APPELLANTS' IOLTA RECORDS."

**I.**

{¶14} In their sole assignment of error, Appellants challenge the trial court's decision denying the motion to quash subpoena and for a protective order.

{¶15} Generally, a ruling on a discovery request by a trial court is not a final, appealable order. *Walters v. Enrichment Ctr. of Wishing Well, Inc.* (1997), 78 Ohio St.3d 118, 121. R.C. §2505.02(A)(3) states that a "provisional remedy," a proceeding ancillary to an action can be a final, appealable order. Very few discovery proceedings qualify as provisional remedies. *Myers v. Toledo,* 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 24. R.C. §2505.02(A)(3) itself names only one - a proceeding that results in the discovery of privileged matter. *Northeast Professional Home Care, Inc. v. Advantage Home Health Servs., Inc.*, 5th Dist. No. 2009-CA-00180, 188 Ohio App.3d 704, 2010-Ohio-1640, ¶ 30 citing *Bennett v. Martin*, 186 Ohio App.3d 412, 2009-Ohio-6195, ¶ 33. *See also, Scott Process Sys. v. Mitchell*, 5th Dist. No. 2012 CA 00021, 2012-Ohio-5971.

{¶16} In the case of an order compelling the production or disclosure of material allegedly protected by attorney-client privilege, an interlocutory appeal will lie. *Shaffer v. OhioHealth Corp.,* Franklin App. No. 03AP-102, 2004-Ohio-63, at ¶ 6.

**{¶17}** In general, discovery orders are reviewed under an abuse-of-discretion standard." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). When the discovery of confidential or privileged information is at issue, however, the reviewing court applies a *de novo* standard. *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶ 29; *Schlotterer* at ¶ 13.

**{¶18}** "It is well-settled that the burden of showing that testimony sought to be excluded under the doctrine of privileged attorney-client communications rests upon the party seeking to exclude it." *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976); *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 660-661, 635 N.E.2d 331 (1994) ("the mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them").

**{¶19}** In general, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Civ.R. 26(B).

**{¶20}** "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 18. The statute provides in relevant part that an attorney "shall not testify in certain respects * * * concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client" unless "the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context." R.C.

2317.02(A)(1). The common-law attorney-client privilege "reaches far beyond [the] proscription against testimonial speech" afforded by the statute and "protects against any dissemination of information obtained in the confidential relationship." (Citation omitted.) *Leslie* at ¶ 26; *See Smith v. Technology House, Ltd.*, 11th Dist. Portage No. 2018-P-0080, 2019-Ohio-2670, ¶¶ 14-17

**{¶21}** In *Pales v. Fedor*, 8th Dist. No. 106024, 2018-Ohio-2056, the Eighth District Court of Appeals reviewed the issue of attorney-client privilege as it applied to IOLTA banking transactions and found:

Although we are aware of no Ohio appellate court that has addressed the issue, federal courts that have considered the issue have long held that bank records relating to the transfer of funds into or out of a lawyer's trust account are not in and of themselves privileged communications. *See, e.g., SEC v. First Sec. Bank of Utah, NA.*, 447 F.2d 166, 167 (10th Cir. 1971), *cert. denied*, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972); *see also Harris v. United States*, 413 F.2d 316, 320 (9th Cir. 1969) ("[C]ourts have repeatedly held that checks and bank records are not subject to the protection of the attorney-client privilege."); *In re Grand Jury Subpoena*, 831 F.2d 225, 227–228 (11th Cir. 1987) ("An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged."); *Nimmer v. SEC*, D.Neb. No. 11–CV–162, 2011 WL 3156791, at *3 (July 26, 2011) ("When an attorney acts as a conduit for a client's funds, attorney-client privilege does not apply."); *Grewal & Assocs.,*

*P.C. v. Hartford Cas. Ins. Co.,* 2010 WL 3909491, at *3 (Sept. 30, 2010) (noting that "[f]or at least forty *1036 years * * *, the federal courts have squarely rejected the recognition of any privilege attaching to an attorney's bank records, whether those records relate to the attorney's general account or client trust accounts"). This is because the attorney-client privilege extends only to " 'the substance of matters communicated to an attorney in professional confidence' " and "[t]he deposit and disbursement of money in a commercial checking account are not confidential communications." *First Sec. Bank* at 167, quoting *Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962).

As one court explained in rejecting a claim that bank records relating to a lawyer's IOLTA account contained privileged or confidential client information:

Generally, there is no legitimate expectation of privacy in the contents of checks, deposit slips or bank statements in a bank's possession. * * * Checks are negotiable instruments used in commercial transactions, voluntarily conveyed to banks, and exposed to the banks' employees in the ordinary course. * * * Case law establishes that [the lawyer's] bank records are not protected by the attorney-client privilege. * * * The [lawyer's] arguments ignore the basic nature of such banking transactions. They are not confidential communications among attorney and client. They are commercial transactions which disclose the identity and other identifiers of the parties to the transaction to the third party banking institution. Even if

the transactions could be viewed by a large stretch of the imagination to be communicative, in no way could they be considered confidential. If the [lawyers] and their clients sought confidentiality regarding the monetary transactions, they blew any cover of secrecy by utilizing a commercial banking enterprise. *Najjar v. United States*, S.D.Ind. No. 1:02–cv–1807–JDT–WTL, 2003 WL 21254772, at *2–3 (Apr. 11, 2003); *see also SEC v. W Fin. Group, LLC*, N.D.Tex. No. 3–08–CV–0499–N, 2009 WL 636540, at *1–2 (Mar. 9, 2009) (rejecting contention that bank records relating to the transfer of funds into and out of attorney's IOLTA account were privileged).

Similarly, the Ninth Circuit Court of Appeals, in affirming the denial of a motion to quash an IRS summons issued to the Bank of America for production of an attorney's bank records, stated:

It is well settled that there is no privilege between a bank and a depositor[.] * * * In refusing to extend the privilege, we stated [in *Harris v. United States*, 413 F.2d 316 (9th Cir. 1969) ]:

The reasons which led to the attorney-client privilege, such as the aim of encouraging full disclosure in order to enable proper representation, do not exist in the case of a bank and its depositor. Moreover, the client, by writing the check which the attorney will later cash or deposit at the bank, has set the check afloat on a sea of strangers. The client knows when delivering the check, and the attorney knows when cashing or depositing it, that the check will be viewed by various employees at the bank where it is cashed or

deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return. Thus, the check is not a confidential communication, as is the consultation between attorney and client. *Id.* at 319–20. * * * [T]here is no confidentiality where a third party such as a bank either receives or generates the documents sought by the IRS. Because the attorney-client privilege applies only where the communication between attorney and client is confidential, there is no privilege protecting the documents the IRS seeks in the present action. * * * "[T]he attorney-client privilege ordinarily protects neither the client's identity nor information regarding the fee arrangements reached with the client." *United States v. Horn* (*In re Horn*), 976 F.2d 1314, 1317 (9th Cir. 1992). *Reiserer v. United States*, 479 F.3d 1160, 1165 (9th Cir. 2007).

**{¶22}** *Pales v. Fedor*, 8th Dist. No. 106024, 2018-Ohio-2056, ¶¶ 45-47

**{¶23}** We agree with the reasoning of Eighth District and find that IOLTA banking transactions are not confidential communications between an attorney and his or her client. Accordingly, the attorney-client privilege does not apply. Appellants herein have not cited any authority to the contrary.

**{¶24}** Furthermore, the GCCDC states in their brief, and by their actions in bringing this lawsuit against its former counsel, that it has waived the attorney-client privilege.

**{¶25}** Based on the foregoing, we find the trial court did not err in denying Appellants' motion to quash and for a protective order.

**{¶26}** Appellants' sole assignment of error is overruled.

**{¶27}** Accordingly the judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Wise, John, J.

Gwin, P. J., and

Wise, Earle, J., concur.

JWW/k 0825