[Cite as *Rehm v. Eckinger*, 2024-Ohio-1860.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LOUIS J. REHM, EXECUTOR OF THE ESTATE OF JUNE A. REHM, DECEASED | : | JUDGES: |
| | : | |
| | : | |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2023CA00113 |
| | : | |
| ROBERT W. ECKINGER, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Case No. 2022CV01486

JUDGMENT:     REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:     May 10, 2024

APPEARANCES:

For Plaintiff-Appellant:

ADAM D. FULLER
MONICA B. ANDRESS
75 E. Market St.
Akron, OH 44308

For Defendants-Appellees:

ANDREW J. DORMAN
HOLLY MARIE WILSON
JESSICA S. FORREST
200 Public Square, Suite 1200
Cleveland, OH 44114

*Delaney, P.J.*

{¶1} Plaintiff-Appellant Louis J. Rehm, as Executor of the Estate of June A. Rehm, Deceased, appeals the August 29, 2023 judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Complaint for Legal Malpractice

{¶2} On September 13, 2022, Plaintiff-Appellant Loius J. Rehm, as Executor of the Estate of June A. Rehm, Deceased, filed a complaint with the Stark County Court of Common Pleas bringing a claim of legal malpractice against Defendants-Appellees Robert W. Eckinger and Eckinger Law Offices, Ltd. In the complaint, Appellant alleged that his mother, June A. Rehm, retained Appellees in June 2019 to prepare her estate planning. One piece of her estate planning regarded her real property located in Orrville, Ohio ("the Farm.") On April 28, 2020, Appellant claimed that June Rehm told Appellees to give Appellant (1) 75% interest in the Farm and (2) 100% of the mineral rights to the Farm. She directed Appellees to give her other son, Carl Rehm Jr., a 25% interest in the Farm.

{¶3} The Last Will and Testament of June A. Rehm, executed on May 13, 2020, disposed of 75% interest in the Farm to Appellant, 25% interest in the Farm to Carl Rehm, Jr., and 100% of the mineral rights in the Farm to Appellant (hereinafter, "2020 Will"). The disposition was subject to the provision that Appellant had the option to purchase the entire 25% interest of Carl Rehm, Jr. at the appraised fair market value or a value agreed to by the parties.

{¶4} June Rehm died on August 30, 2021. Appellant retained Appellees to open an estate for June Rehm.

{¶5} On October 17, 2021, Carl Rehm, Jr. filed an Affidavit pursuant to R.C. 5302.222, confirming a Transfer on Death Designation Affidavit that was recorded by the Wayne County Recorder, Volume 889, Page 4642 on October 17, 2018. The Transfer on Death Designation Affidavit ("TODDA") recorded on October 17, 2018 was signed by June A. Rehm and prepared by Attorney Melissa Craemer Smith. The TODDA stated that upon the death of June Rehm, the entire undivided interest of the Farm would pass to Appellant and Carl Rehm, Jr. as transfer on death beneficiaries with 50% of the Farm going to Appellant and 50% of the Farm going to Carl Rehm, Jr.

{¶6} On October 14, 2021, Appellant claimed he became aware of the TODDA through a realtor. On October 21, 2021, Appellees filed the application to probate the 2020 Will with the Wayne County Probate Court. The 2020 Will was admitted to probate on November 4, 2021.

{¶7} The Farm was ultimately disposed of pursuant to the terms of the TODDA, not the 2020 Will.

{¶8} Appellant filed his claim for legal malpractice against Appellees arguing that they committed legal malpractice by failing to discover the existence of the TODDA and failing to revoke the TODDA before preparing June Rehm's estate plan.

**Discovery**

{¶9} On June 25, 2023, Appellees filed a Motion to Release Attorney-Client File. In the motion, Appellees requested an order from the trial court permitting the release of the attorney-client file of Attorney Melissa Craemer Smith and her law firm concerning the

representation of June Rehm and the preparation of the TODDA. Appellant as Executor would not waive attorney-client privilege between Attorney Craemer Smith and the deceased, June Rehm. Appellees asked the trial court to waive the attorney-client privilege and confidentiality between Attorney Craemer Smith and June Rehm so that Appellees could defend against Appellant's legal malpractice claim. Appellees argued that a key piece of its defense against Appellant's claim of legal malpractice was that June Rhem knew of the non-effect of the 2020 Will but wanted to sign it anyway. Appellees argued that June Rehm's intent was a key issue in the matter.

{¶10} In support of its motion, Appellees attached emails which it argued were non-privileged communications received in discovery from Attorney Craemer Smith. Exhibit B was an email from Attorney Craemer Smith dated August 4, 2022, which stated:

> I don't remember a specific incident, but I am sure this occurred when Louis bullied his mother into removing [S.B.] (June's friend) as her POA and she changed her Will. I believe Louis and Amy were named as June's new POA. June is virtually blind, and she was very intimidated by Louis. I would expect that June had no idea that she had established a joint account with Louis and Amy.

(Exhibit B, Motion to Release Attorney-Client File, June 25, 2023). In a second email sent from Attorney Craemer Smith on October 7, 2021, she stated:

> Interesting. It looks like Louis may have convinced his mother to do a new Will after all. Let me know when you get a copy of [the] Will, please.

(Exhibit C, Motion to Release Attorney-Client File, June 25, 2023). Appellees argued these communications demonstrated Appellant's involvement in the matter and information from the attorney-client file would support their defense.

{¶11} Appellant responded to the motion, arguing the trial court did not have the authority to compel disclosure of the file because Appellant had not waived the attorney-client privilege and there was no recognized applicable exception to the privilege. Attorney Craemer Smith also filed a motion to protect attorney-client communications and documents, requesting the trial court quash Appellees' subpoena. She argued there was no exception in this case to the attorney-client privilege.

{¶12} In their reply to their motion, Appellees argued that Appellant was refusing to waive the attorney-client privilege because the information would be harmful to Appellant. Appellees argued that the discovery obtained so far in Appellant's deposition, the deposition of Carl Rehm, Jr., and Attorney Craemer Smith's emails, it appeared that Appellant pressured June Rehm as to the disposition of the Farm, resulting in the 2020 Will. The TODDA reflected June Rehm's true intent in the disposition of the Farm. Appellees raised the common law self-protection exception to the attorney-client privilege as a basis for the trial court to grant its motion for the release of the attorney-client file.

{¶13} Appellant moved to strike Appellee's reply for raising new issues not argued in their original motion, or in the alternative, leave to file a sur-reply.

{¶14} On August 29, 2023, the trial court issued its judgment entry granting Appellees' motion to release the attorney-client file. The judgment entry stated the trial court adopted the Appellees' rationale as argued in their reply, which raised the self-protection exception to the attorney-client privilege.

{¶15} On September 6, 2023, Appellant filed his notice of appeal of the trial court's August 29, 2023 judgment entry.

### ASSIGNMENTS OF ERROR

{¶16} Appellant raises one Assignment of Error:

"THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS-APPELLEES' 'MOTION TO RELEASE ATTORNEY-CLIENT FILE' ON THE PURPORTED BASIS OF THE SELF-PROTECTION EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE."

### ANALYSIS

{¶17} Appellant argues the trial court erred when it ordered Attorney Craemer Smith release her attorney-client file for June Rehm to Appellees under the self-protection exception to the attorney-client privilege. We agree.

{¶18} "An order compelling the production of materials alleged to be protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4)." *A. Morgan Bldg. Group, LLC v. Owners Ins. Co.*, 2023-Ohio-3133, ¶ 5 (9th Dist.) quoting *State Auto. Mut. Ins. Co. v. Rowe*, 2022-Ohio-4443, ¶ 12 (9th Dist.), quoting *In re Grand Jury Proceeding of John Doe*, 2016-Ohio-8001, ¶ 21; *Yost v. Schaffner*, 2020-Ohio-5127, ¶ 22 (5th Dist.) In general, discovery orders are reviewed under an abuse-of-discretion standard. *Yost v. Schaffner*, 2020-Ohio-5127, ¶ 23 (5th Dist.) citing *Med. Mut. of Ohio v. Schlotterer*, 2009-Ohio-2496, ¶ 13; *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996). When the discovery of confidential or privileged information is at issue, however, the reviewing court applies a de novo standard. *Yost* at ¶ 23 citing *Roe*

*v. Planned Parenthood Southwest Ohio Region*, 2009-Ohio-2973, ¶ 29; *Schlotterer* at ¶ 13.

{¶19} The Ohio Supreme Court has explained the importance of the attorney-client privilege:

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States* (1998), 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379. As we explained in *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, " 'Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves the public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.' *Upjohn Co. v. United States* (1981), 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584; *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 7. '[B]y protecting client communications designed to obtain legal advice or assistance, the client will be more candid and will disclose all relevant information to his attorney, even potentially damaging and embarrassing facts.' (Footnote omitted.) 1 Rice, Attorney–Client Privilege in the United States (2d Ed.1999) 14–15, Section 2.3." *Leslie* at ¶ 20.

*Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 16.

{¶20} "In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law." *Yost v. Schaffner*, 2020-Ohio-5127, ¶ 26 (5th Dist.) quoting *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 2005-Ohio-1508, ¶ 18. R.C. 2317.02(A) provides in relevant part:

The following persons shall not testify in certain respects:

(A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

* * *

(2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the

communications has made a prima-facie showing of bad faith, fraud, or criminal misconduct by the client.

{¶21} June Rehm was the client of Attorney Craemer Smith. There is no dispute that Appellant, as executor of the estate of June Rehm, did not waive the attorney-client privilege between Attorney Craemer Smith and June Rehm. In this case, Appellees argue the common law self-protection exception to privilege applied to allow the trial court to order the release of Attorney Craemer Smith's attorney-client file.

{¶22} "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived" but common law exceptions to the privilege are still recognized. *Stepka v. McCormack*, 2016-Ohio-3103, ¶ 23 (9th Dist.) citing *Squire Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 44 (waivers of, and exceptions to, attorney client privilege are distinct matters). In *Givaudan Flavors Corp.*, the Ohio Supreme Court recognized self-protection as a common law exception to the attorney-client privilege. The Court described the self-protection exception as follows:

At common-law, "[a]n exception to the attorney-client privilege permits an attorney to reveal otherwise protected confidences when necessary to protect his own interest." Levine, Self–Interest or Self–Defense: Lawyer Disregard of the Attorney–Client Privilege for Profit and Protection (1977), 5 Hofstra L.Rev. 783. This exception provides that "when an attorney becomes involved in a legal controversy with a client or former client, the attorney may reveal any confidences necessary to defend himself or herself or to vindicate his or her rights with regard to the disputed issues." 1 Stone

& Taylor, Testimonial Privileges (2d Ed.1995) 1–177, Section 1.66. See also *Mitchell v. Bromberger* (1866), 2 Nev. 345; 1 McCormick on Evidence (6th Ed.2006) 414, Section 91.1.

The self-protection exception dates back over 150 years to its articulation by Justice Selden in *Rochester City Bank v. Suydam, Sage & Co.* (N.Y.Sup.Ct.1851), 5 How. Pr. 254, 262. There he wrote, "Where the attorney or counsel has an interest in the facts communicated to him, and when their disclosure becomes necessary to protect his own personal rights, he must of necessity and in reason be exempted from the obligation of secresy [sic]." (Emphasis added in part.)

* * * [T]he attorney-client privilege does not prevent an attorney from testifying to the correctness, amount, and value of the legal services rendered to the client in an action calling those fees into question. *In re Butler's Estate*, 137 Ohio St. at 114, 28 N.E.2d 186; see also 1 Giannelli & Snyder, Evidence, at 342 ("The privilege also does not apply in an action by an attorney against the client for the collection of legal fees"); Weissenberger's Ohio Evidence at 246 ("Nor does privilege attach in actions between the attorney and client, as in a fee dispute").

Further, the self-protection exception to the attorney-client privilege permitting the attorney to testify also applies when the client puts the representation at issue by charging the attorney with a breach of duty or other wrongdoing. Weissenberger's Ohio Evidence, id.; 1 Giannelli & Snyder, Evidence, at 342. Courts recognize that " '[t]he attorney-client

privilege cannot at once be used as a shield and a sword.' " *In re Lott* (C.A.6, 2005), 424 F.3d 446, 454, quoting *United States v. Bilzerian* (C.A.2, 1991), 926 F.2d 1285, 1292. Thus, a client may not rely on attorney-client communications to establish a claim against the attorney while asserting the attorney-client privilege to prevent the attorney from rebutting that claim.

Rather, "the attorney-client privilege exists to aid in the administration of justice and must yield in circumstances where justice so requires," *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d at 661, 635 N.E.2d 331. The same considerations of justice and fairness that undergird the attorney client privilege prevent a client from employing it in litigation against a lawyer to the lawyer's disadvantage. Wolfram, Modern Legal Ethics (1986) 308, Section 6.7.8; Wright & Miller, Federal Practice & Procedure (1997, Supp.2010), Section 5503; Restatement (Third) of the Law Governing Lawyers, Section 83, Comment b.

Thus, courts apply the exception because "[i]t would be a manifest injustice to allow the client to take advantage of [the attorney-client privilege] to the prejudice of his attorney * * * [or] to the extent of depriving the attorney of the means of obtaining or defending his own rights." *Mitchell v. Bromberger*, 2 Nev. 345; see also *Doe v. A Corp.* (C.A.5, 1983), 709 F.2d 1043, 1048–1049; *Daughtry v. Cobb* (1939), 189 Ga. 113, 118, 5 S.E.2d 352; *Stern v. Daniel* (1907), 47 Wash. 96, 98, 91 P. 552; *Koeber v. Somers*, 84 N.W. at 995.

*Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶¶ 34-35, 40-43.

{¶23} *Givaudan Flavors Corp.* and its definition of the self-protection exception appear to apply to Appellees. Appellant brought a legal malpractice claim against Appellees based on their representation of June Rehm. Appellees sought discovery of the attorney-client file to defend themselves from Appellant's legal malpractice claim and argued that Appellant was taking advantage of the attorney-client privilege to the prejudice of Appellees. The email exhibits provided by Attorney Craemer Smith supported the intimation that Appellant was using the attorney-client privilege as both sword and shield, placing this case squarely within the self-protection exception. But, as with all good stories, there is a twist. The Ninth District Court of Appeals took a closer look at *Givaudan Flavors Corp.* and the self-protection exception to hold under a similar fact pattern that the self-protection exception is more limited than it appears.

{¶24} In *Givaudan Flavors Corp.*, the Supreme Court held, "Ohio recognizes the common-law self-protection exception to the attorney-client privilege, which permits an attorney to testify concerning attorney-client communications when necessary to establish a claim for legal fees on behalf of the attorney or to defend against a charge of malpractice or other wrongdoing in litigation between the attorney and the client." 2010-Ohio-4469 at paragraph one of the syllabus. The Ninth District was presented with the issue of whether the self-protection exception applies in *Stepka v. McCormack*, 2016-Ohio-3103 (9th Dist.). In *Stepka*, a husband retained an Ohio attorney to represent him in a legal separation action from his wife who had a new job in Minnesota and wanted to take the children with her. The husband wanted to stay in Ohio with the children, so the

Ohio attorney filed a complaint for legal separation and motion to order the children to return to Ohio. The Ohio attorney also moved the trial court for a restraining order, which the trial court granted but the order did not address the wife's ability to move the children from Ohio. *Id.* at ¶ 3. The wife took the children to Minnesota, and she filed a counterclaim for divorce in Lorain County. *Id.* at ¶ 4. The Ohio attorney recommended that the husband dismiss his complaint for legal separation because it would help the parties to settle. The husband voluntarily dismissed his complaint, the wife dismissed her counterclaim for divorce, and she filed a complaint for divorce in Minnesota. *Id.* at ¶ 6. The Ohio attorney advised the husband to retain counsel in Minnesota. The husband and the wife settled their Minnesota divorce action, with joint custody of the children as the wife being the primary residential custodian. *Id.* at ¶¶ 7-8.

{¶25} The husband filed a complaint for legal malpractice against the Ohio attorney. During the discovery phase of the litigation, the Ohio attorney sought disclosure of the husband's attorney-client file with his Minnesota attorney. *Id.* at ¶¶ 9-10. The trial court denied the motion to compel disclosure and granted the husband a protective order. *Id.* at ¶ 10. After a bench trial, the trial court awarded the husband damages. *Id.* at ¶ 12. On appeal, the Ohio attorney argued the trial court erred in granting the husband's motion for protective order and denying the Ohio attorney's motion to compel communications between the husband and his Minnesota attorney. *Id.* at ¶ 14. The Ohio attorney argued the self-protection exception to privilege applied. *Id.* at ¶ 23. The Ninth District examined *Givaudan Flavors Corp.* and found the exception was limited to the file of the attorney who was seeking self-protection:

Here, the privilege at issue was that between Husband and his Minnesota attorney. The *Minnesota attorney* was not attempting to establish a claim for legal fees or to defend himself from a charge of malpractice in the instant case. *See id.* at ¶ 34–35 (explaining the history of self-protection exception as permitting disclosure of otherwise protected confidences when necessary to protect an attorney's "own" rights). Accordingly, we conclude that *Squire* does not encompass the situation applicable here, where the defending attorney seeks disclosure of a successor attorney's file. Mr. McCormack has not directed this Court to any case law which applies the common-law self-protection exception to privilege to the disclosure of a file of an attorney who is not himself seeking self-protection. *See* App.R. 16(A)(7). Further, this Court recently decided that the self-protection exception does not entitle a defending attorney to the discovery of communications between his former client and successor attorney. *Cook v. Bradley*, 9th Dist. Lorain No. 15CA010726, 2015-Ohio-5039, 2015 WL 8150949, ¶ 12–13.

*Stepka v. McCormack*, 2016-Ohio-3103, ¶ 24 (9th Dist.); *accord Cochran Ohio LLC v. Washington*, 2023-Ohio-2212, ¶ 25 (2nd Dist.).

{¶26} In this case, Appellees seek to discover the attorney-client file between June Rehm and Attorney Craemer Smith. Appellees are arguing that self-protection applies to the discovery of communications between June Rehm, their former client, and Attorney Craemer Smith, June Rehm's previous attorney. Attorney Craemer Smith is not herself seeking self-protection. We agree with the analysis of *Stepka* that the self-

protection exception is limited to the discovery of communications between the defending attorney and the defending attorney's former client, not communications between the former client and the former client's previous or successor attorney. To hold otherwise would expand the self-protection exception of attorney-client privilege to the disclosure of a file of an attorney who is not herself seeking self-protection. *Stepka*, 2016-Ohio-3103, ¶ 24; *Cochran Ohio LLC v. Washington*, 2023-Ohio-2212, ¶ 25 (2nd Dist.)

{¶27} Upon our de novo review, we find the trial court erred in granting Appellees' Motion to Release Attorney-Client File based on the self-protection exception to attorney-client privilege.

{¶28} Appellant's sole Assignment of Error is sustained.

## CONCLUSION

{¶29} The judgment of the Stark County Court of Common Pleas is reversed, and the matter is remanded to the trial court for further proceedings consistent with this Opinion and law.

By: Delaney, P.J.,

Gwin, J. and

Baldwin, J., concur.