[Cite as *Lemons v. State*, 2020-Ohio-5619.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANTHONY LEMONS,                                     :

    Plaintiff-Appellee,                        :

                          No. 109188

    v.                                         :

STATE OF OHIO,                                      :

    Defendant-Appellant.                       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 10, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-15-839878

---

### *Appearances:*

David B. Malik and Sara Gedeon; Kevin M. Spellacy;
Gerhardstein & Branch, Co., L.P.A., Alphonse A.
Gerhardstein, and Jennifer L. Branch, *for appellee.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Brian R. Gutkoski and Kenneth M. Rock,
Assistant Prosecuting Attorneys, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, state of Ohio, appeals the trial court's judgment granting summary judgment to plaintiff-appellee, Anthony Lemons, declaring

Lemons to be a wrongfully imprisoned individual under R.C. 2743.48(A). The state raises one assignment of error for our review:

> The trial court erred when it granted appellee's motion for summary judgment and denied the State's cross motion for summary judgment on October 10, 2019.

{¶ 2} Finding no merit to the state's assigned error, we affirm.

## I. Procedural History and Factual Background

{¶ 3} In October 1995, a jury convicted Lemons of murder for the death of Eric Sims and attempted murder of Jude Adamcik. The trial court sentenced him to 15 years to life in prison. This court affirmed his convictions. *See State v. Lemons*, 8th Dist. Cuyahoga No. 71644, 1998 Ohio App. LEXIS 125 (Jan. 15, 1998) (for factual background).

{¶ 4} In December 2013, the criminal trial judge — the same judge who presided over Lemons's jury trial — granted Lemons a new trial pursuant to newly discovered exculpatory evidence. The judge found that "undisclosed evidence compels the court to grant defendant a new trial" under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The judge explained that Lemons received police reports from a public records request that had not been provided to him in discovery before his 1995 trial. The court stated that the "evidence includes critical information that throws doubt upon the credibility of eyewitness Adamcik who testified for the state at trial."

{¶ 5} Specifically, the criminal trial judge found that Lemons was not told that police showed Adamcik a photo array of six individuals who were known to go

by the nickname of "Tone" on January 8, 1995, which was nearly eight months after Sims's murder in April 1994, and that Adamcik did not identify Lemons that day. Instead, on January 8, 1995, Adamcik told police that she would rather see the individual in person. Police then showed Adamcik the same photo array the following day, on January 9, and that is when she chose Lemons as Tone. The criminal trial judge noted that Adamcik admitted at trial that she was shown photos on more than one occasion, but not that she was unable to identify the shooter when first looking at the photos.

{¶ 6} The criminal trial judge then noted that the state never disclosed to Lemons that several days after Adamcik identified him in an April 1995 physical lineup, Adamcik stated to one of the detectives that she was positive she identified the correct person because after she chose him in the lineup, she noticed his shoes, and they were the same shoes that he had been wearing on the night of the murder. The state also did not tell Lemons that the detectives seized Lemons's shoes after Adamcik's claim, and subsequently discovered from a Nike representative that the shoes Lemons had been wearing in the lineup could not have been the same shoes that he was wearing at the time of the murder because the shoes had not been manufactured until at least January 1995. The criminal trial judge further noted that although Adamcik testified at trial that the shooter was wearing certain tennis shoes, no testimony was elicited from her about her claim of recognizing those shoes at the lineup over a year later.

{¶ 7} Adamcik passed away of natural causes in November 1996. Because she was the state's only evidence at Lemons's trial that linked him to the crimes, the state filed a notice of dismissal without prejudice on January 24, 2014. On that same date, the state moved for leave to dismiss the indictment without prejudice. The state informed the court that it wished to continue its investigation into Sims's murder to look for discoverable evidence that could lead to reprosecution. Lemons also moved to dismiss his criminal case with prejudice.

{¶ 8} On March 5, 2014, the criminal trial judge denied Lemons's motion to dismiss. Eight days later, the criminal trial judge denied the state's motion to dismiss and set the case for trial.

{¶ 9} On August 29, 2014, the state renewed its motion to dismiss the case without prejudice. The state informed the criminal trial judge that it would continue to further investigate Sims's murder. The judge denied the state's motion to renew its motion to dismiss and set another date for trial.

{¶ 10} On December 2, 2014, the state again sought permission to dismiss the indictment without prejudice, which would allow for further criminal investigation. Later that same month, the criminal trial judge denied the state's motion to dismiss and ordered the state to proceed immediately to trial. When the state was unable to proceed, the trial court entered a judgment of acquittal due to insufficient evidence pursuant to Crim.R. 29.

{¶ 11} On February 3, 2015, Lemons filed a civil complaint against the state seeking a declaration that he was a wrongfully imprisoned individual as defined by

R.C. 2743.48(A), Ohio's wrongful imprisonment statute. While we do not normally place law in the procedural history, it will be helpful to do so in this case to thoroughly understand the procedural history.

{¶ 12} When Lemons filed his civil complaint, former R.C. 2743.48(A) stated that a "wrongfully imprisoned individual" was an individual who establishes each of the following requirements:

> (1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony or felony.
> (2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.
> (3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.
> (4) The individual's conviction was vacated, dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.
> (5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

{¶ 13} In his original complaint, Lemons asserted that he was a wrongfully imprisoned individual due to an "error in procedure" that occurred "subsequent to sentencing and during or subsequent to imprisonment" that resulted in his release

under the first prong of R.C. 2743.48(A)(5), as well as due to his actual innocence under the second prong of R.C. 2743.48(A)(5).

{¶ 14} In March 2015, Lemons filed an amended complaint. In it, he no longer alleged that he was a wrongfully imprisoned individual due to an "error in procedure" that occurred "subsequent to sentencing and during or subsequent to imprisonment" that resulted in his release from prison. Five days before trial, however, in November 2015, Lemons moved to amend his complaint again, this time to reinstate his allegations that he was released from prison due to procedural errors that occurred "subsequent to sentencing and during or subsequent to imprisonment." He did so because the Ohio Supreme Court had just released a case, *Johnston v. State*, 144 Ohio St.3d 311, 2015-Ohio-4437, 42 N.E.3d 746, that he claimed left open the question as to whether an ongoing *Brady* violation — one that began before trial and continued after conviction and prison — could amount to an "error in procedure" that "occurs subsequent to sentencing or during and subsequent to imprisonment" under R.C. 2743.48(A)(5). The trial court denied his motion, and the matter proceeded to a bench trial on the issue of whether Lemons was actually innocent under R.C. 2743.48(A)(5).

{¶ 15} After a three-day trial, the trial court determined that Lemons did not establish by a preponderance of the evidence that he was actually innocent of murdering Sims and attempting to murder Adamcik. Lemons appealed. *See Lemons v. State*, 2017-Ohio-8584, 100 N.E.3d 871 (8th Dist.), *appeal not accepted*, 152 Ohio St.3d 1462, 2018-Ohio-1795, 97 N.E.3d 500. Lemons raised two issues on

appeal: (1) the trial court's decision was against the weight of the evidence, and (2) the trial court abused its discretion when it denied him leave to amend his complaint. *See id.* at ¶ 1.

{¶ 16} This court disagreed with Lemons's first argument that the trial court's decision was against the manifest weight of the evidence. *Id.* at ¶ 122. In doing so, we recognized that the burden of establishing actual innocence by a preponderance of the evidence was "extremely difficult for a claimant to overcome." *Id.* at ¶ 113. But we agreed with Lemons's second argument that the trial court should have granted him leave to amend his complaint, reasoning that there was no evidence of bad faith or undue delay and the state was not prejudiced by Lemons's motion because it had thoroughly argued, to the trial court and this court, the question of law that was at issue, namely, whether the continued withholding of exculpatory evidence (an "ongoing *Brady* violation") amounted to an "error in procedure" that occurs "subsequent to sentencing or during and subsequent to imprisonment." *Id.* at ¶ 146. We noted that R.C. 2743.48(A)(1)-(3) were not in dispute and that Lemons met the requirements of subsection (A)(4) when the criminal trial court vacated and dismissed his convictions. *Id.* at ¶ 149. Thus, the only issue remaining as to whether Lemons met the requirements of R.C. 2743.48(A)(5), was whether the "ongoing *Brady* violation" amounted to an "error in procedure" that occurs "subsequent to sentencing or during and subsequent to imprisonment." *Id.* at ¶ 146. However, we declined to address that

question on its merits because the trial court had not yet done so. *Id.* at ¶ 147. We remanded to the trial court to decide the issue. *Id.*

{¶ 17} After this court's remand and before the trial court decided the issue, the General Assembly amended R.C. 2743.48, effective March 22, 2019. *See* 2018 Am.Sub.H.B. No. 411 ("H.B. 411"). R.C. 2743.48(A)(5) now states:

> Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person. In addition to any other application of the provisions of this division regarding an error in procedure that occurred prior to, during, or after sentencing, as those provisions exist on and after the effective date of this amendment, if an individual had a claim dismissed, has a claim pending, or did not file a claim because the state of the law in effect prior to the effective date of this amendment barred the claim or made the claim appear to be futile, those provisions apply with respect to the individual and the claim and, on or after that effective date, the individual may file a claim and obtain the benefit of those provisions.

{¶ 18} The parties agreed upon remand that the trial court should decide the issue based on their competing summary judgment motions and that its "sole decision upon remand [was] whether [Lemons] satisfies R.C. 2742.48(A)(5)." Specifically, the trial court stated that the only issue it had to decide upon remand from this court was "whether an ongoing *Brady* violation that continues after a claimant was convicted, sentenced, and sent to prison * * * amounts to an 'error in

procedure' that occurs 'subsequent to sentencing or during and subsequent to imprisonment.'"

**{¶ 19}** The trial court explained that the legislature had amended the relevant subsection, R.C. 2743.48(A)(5), and that it "clearly retroactively applied" to Lemons. Although the state now contends that it conducted additional discovery on remand to determine "whether there was a *Brady* violation committed by the [s]tate in the original criminal proceedings," the trial court determined that "[t]wo separate courts" have already "found that [Lemons] was subject to a *Brady* violation" in the original criminal proceedings. The trial court explained that the criminal trial judge who vacated Lemons's convictions in 2013 had found that the state committed a *Brady* violation when it withheld material, exculpatory evidence. The trial court further noted that this court in *Lemons*, 2017-Ohio-8584, 100 N.E.3d 871, agreed with the criminal trial judge that the state committed a *Brady* violation. *See id.* at ¶ 109 – 112. Although the trial court did not agree that a *Brady* violation occurred, it found that the issue of whether a *Brady* violation occurred could not be relitigated.

**{¶ 20}** Having determined that a *Brady* violation occurred, the trial court explained that the only issue left for it to determine was whether "the timing of said violation * * * led to [Lemons's] release from prison." The trial court found that it did. It explained:

> The *Brady* violation occurred "prior to, during, or after sentencing" as the exculpatory evidence withheld by the [s]tate failed to be provided not only during [Lemons's] criminal trial, but during his [postconviction] proceedings. The criminal trial [j]udge discovered this error subsequent to sentencing and during [Lemons's]

imprisonment. In addition, the *Brady* violation plainly led to [Lemons's] release, as this [c]ourt has previously stated, "[u]ndoubtedly, the *Brady* violations regarding suppression of the Nike document largely resulted in [Lemons's] conviction being overturned and a new trial ordered."

{¶ 21} The trial court concluded that Lemons met the requirements of R.C. 2743.48(A)(5) and, therefore, was a wrongfully imprisoned individual. It is from this judgment that the state now appeals.

## II. Standard of Review

{¶ 22} We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶ 23} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that (1) there are no genuine issues of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

## III. Law and Analysis

{¶ 24} In its sole assignment of error, the state raises four issues for our review: (1) whether the amendments in H.B. 411 retroactively apply to Lemons, (2) whether the trial court improperly imported the criminal trial judge's conclusions that a *Brady* violation had occurred, (3) whether the information concerning Lemons's Nike shoes was orally disclosed to defense counsel, and (4) whether a *Brady* violation occurred and if so, whether it is material.

### A. Retroactivity

{¶ 25} The state first argues that the trial court erred when it found that the amendments set forth in H.B. 411 apply to Lemons's claim because the amendments are not retroactive.

{¶ 26} R.C. 2743.48(A)(5) as enacted by H.B. 411 now states in relevant part:

> In addition to any other application of the provisions of this division regarding an error in procedure that occurred prior to, during, or after sentencing, as those provisions exist on and after the effective date of this amendment, if an individual had a claim dismissed, has a claim pending, or did not file a claim because the state of the law in effect prior to the effective date of this amendment barred the claim or made the claim appear to be futile, those provisions apply with respect to the individual and the claim and, on or after that effective date, the individual may file a claim and obtain the benefit of those provisions.

{¶ 27} As stated in the amicus brief filed by the Ohio Attorney General in this appeal, "[t]his language clearly states the legislature's intent for individuals like Lemons, who previously could not file claims based on a *Brady* violation, to gain the benefit of this amendment." We agree that this language plainly states that the amendment is retroactive.

{¶ 28} The state further argues that the retroactive application of H.B. 411's amendments to Lemons's case is unconstitutional "as applied" to Lemons. But the state does not set forth any argument as to how H.B. 411 is unconstitutional as applied to Lemons. We therefore decline to address this argument.

{¶ 29} The state further contends that because H.B. 411's amendments are substantive, its retroactive application violates due process. Article II, Section 28, of the Ohio Constitution prohibits the General Assembly from passing retroactive laws. A law violates the Retroactive Clause if (1) the legislature intended it to be retroactive, and (2) the law affects a substantive right. *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), paragraphs two and three of the syllabus.

{¶ 30} In *Johnston*, 144 Ohio St.3d 311, 2015-Ohio-4437, 42 N.E.3d 746, the Ohio Supreme Court addressed the issue of whether a 2003 amendment to R.C. 2743.48(A)(5) that expanded the definition of a wrongfully imprisoned individual to allow convicted persons who could not establish their actual innocence, but who could establish that an error in procedure resulted in their release, violated the Retroactivity Clause. The Ohio Supreme Court found that the legislature explicitly stated that it intended the amendment to apply retroactively and that the amendment was "substantive because it imposes new liability on the state for past imprisonments." *Id.* at ¶ 22. But the Supreme Court explained that because the amendment to R.C. 2743.48(A)(5) impaired only the rights of the state and not those of individuals seeking recovery for wrongful imprisonment, the amendment did not

violate the Retroactivity Clause. *Id.* at ¶ 22, citing *State ex rel. Sweeney v. Donahue*, 12 Ohio St.2d 84, 87, 232 N.E.2d 398 (1967).

{¶ 31} The analogy in *Johnston* to the present case is nearly identical. The General Assembly explicitly intended for the amendments in R.C. 2743.48(A)(5) to be retroactive, and they were substantive amendments because they imposed new liability on the state for wrongfully convicted individuals who met the new criteria. But the amendments do not violate the Retroactivity Clause because only the state's rights are impaired, not an individual's rights.

{¶ 32} The state cites to *Roe v. Planned Parenthood S.W. Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, in support of its argument that the amendments to R.C. 2743.48(A)(5) violate the Retroactivity Clause. In *Roe*, the Ohio Supreme Court found that the application of an amended statute to impose punitive damages against Planned Parenthood for its breach of duty to obtain parents' consent before performing an abortion on their minor daughter violated the Retroactivity Clause. *Id.* at ¶ 37. However, *Roe* is not applicable to the instant case because the amendment impaired the rights of an organization, Planned Parenthood, and not the state as it does in this case.

{¶ 33} Accordingly, we find no merit to the state's arguments relating to retroactivity.

## B. Relitigation

{¶ 34} The state further argues that the trial court "improperly imported" the criminal trial judge's conclusions that a *Brady* violation had occurred rather than relitigate the matter. Within this single issue, the state raises four sub-issues.

{¶ 35} The state first contends that collateral estoppel does not apply in this case. The doctrine of issue preclusion is one of two related concepts, along with claim preclusion, within the legal doctrine of res judicata. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 653 N.E.2d 226 (1995). Claim preclusion holds that "[a] valid, final judgment [] on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* at syllabus. Issue preclusion, also known as collateral estoppel, provides that "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different[.]" *Fort Frye Teachers Assn. v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). While claim preclusion precludes relitigation of the same cause of action, issue preclusion precludes relitigation of an issue that has been actually and necessarily litigated and determined in a prior action. *Id.*, citing *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969). Here, we are concerned solely with issue preclusion or collateral estoppel.

{¶ 36} In *Thompson v. Wing*, 70 Ohio St.3d 176, 637 N.E.2d 917 (1994), the Ohio Supreme Court set forth three requirements for application of collateral estoppel or issue preclusion:

> Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

*Id.* at 183, citing *Whitehead* at paragraph two of the syllabus. "The essential test in determining whether the doctrine of collateral estoppel is to be applied is whether the party against whom the prior judgment is being asserted had full representation and a 'full and fair opportunity to litigate that issue in the first action.'" *Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813, 623 N.E.2d 213 (8th Dist.1993), quoting *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74, 369 N.E.2d 776 (1977).

{¶ 37} The state maintains that "[m]any courts have recognized the inapplicability of any res judicata/collateral estoppel concepts in the context of findings made in criminal proceedings later applying to a civil case." The state cites to one case for this proposition, *Takacs v. Palermo*, 11th Dist. Trumbull No. 4086, 1990 Ohio App. LEXIS 2711, 9 (June 29, 1990), in which the Eleventh District stated, "collateral estoppel would not be given effect in a civil action to any fact determined in the criminal proceeding." The state asserts that in saying this, the Eleventh District "[c]it[ed] two wrongful imprisonment cases." But notably, the state fails to explain, mention, or even cite to, these "two wrongful imprisonment cases."

{¶ 38} These two wrongful imprisonment cases were *Ellis v. State*, 10th Dist. Franklin No. 87AP-1099, 1988 Ohio App. LEXIS 2538 (June 16, 1988), and *Walden v. State*, 10th Dist. Franklin No. 87AP-1026, 1988 Ohio App. LEXIS 2456 (June 16, 1988).[1] Both Ellis and Walden had been convicted and sent to prison. They were both later granted a new trial and found not guilty due to the trier of fact finding that they had established that they acted in self-defense. They later commenced actions in the Franklin County Court of Common Pleas seeking a declaration that they were wrongfully imprisoned. The trial courts agreed, finding that they were bound by the prior judicial determination that the claimants had been found not guilty in their criminal trials. The state appealed both cases.

{¶ 39} The Tenth District in *Ellis* and *Walden* issued nearly identical opinions on the relevant issue on the same day. At the time Ellis and Walden filed their actions, former R.C. 2743.48(A)(4) required that they prove by a preponderance of the evidence that they either did not commit the offense for which they were found guilty (i.e., actual innocence) or that no one committed the offense. The Tenth District found that an acquittal in their criminal trials did not establish that they were wrongfully imprisoned within the meaning of R.C. 2743.48. *Ellis* at 9; *Walden* at 8. The Tenth District explained that a finding of not guilty simply meant that the state did not prove beyond a reasonable doubt the guilt of the defendants. *See Ellis* at 8; *Walden* at 7. But Ellis and Walden, despite being found

---

[1] *Ellis* and *Walden* were affirmed on appeal by the Ohio Supreme Court. *See Walden v. State*, 47 Ohio St.3d 47, 52, 547 N.E.2d 962 (1989).

not guilty due to self-defense, still had to establish by a preponderance of the evidence that they were actually innocent of the offenses for which they were wrongfully convicted. *See Ellis* at 7-9; *Walden* at 6-8.

{¶ 40} *Ellis* and *Walden* are distinguishable from the present case. At the time *Ellis* and *Walden* were decided, claimants could only recover from the state as a wrongfully imprisoned individual if they proved that they were actually innocent of the crimes for which they had been acquitted. The legislature intended that only truly innocent individuals be allowed to recover damages. In 2003, however, R.C. 2743.48 was amended to allow persons who could not establish their actual innocence, but who could establish that an error in procedure resulted in their release, to file a complaint against the state of Ohio seeking a declaration that they had been wrongfully imprisoned. *See* Am.Sub.S.B. No. 149, effective April 9, 2003. "Before this amendment, only individuals who could establish their actual innocence could file such a complaint. Thus, the amendment expanded the criteria by which a claimant could establish that he or she was a wrongfully imprisoned individual." *See Lemons*, 2017-Ohio-8584, 100 N.E.3d 871, at ¶ 131.

{¶ 41} Now, of course, with H.B. 411, the legislature has again amended the statute to explicitly include claimants who "[s]ubsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release[.]"

R.C. 2743.48(A)(5). The newly amended statute requires only that a *Brady* violation that occurred prior to, during, or after sentencing, be discovered subsequent to or during imprisonment. That is exactly what occurred in this case.

{¶ 42} "[A]n absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 201, 443 N.E.2d 978 (1983). The Supreme Court further explained:

> Collaterally estopping a party from relitigating an issue previously decided against it violates due process where it could not be foreseen that the issue would subsequently be utilized collaterally, and where the party had little knowledge or incentive to litigate fully and vigorously in the first action due to the procedural and/or factual circumstances presented therein.

*Id.*

{¶ 43} In 2013, the criminal trial judge held a hearing on the issue of whether a *Brady* violation had occurred where both parties were present and had the opportunity to prove and defend their respective positions. After the hearing, the criminal trial judge found that a *Brady* violation had occurred because the state had withheld exculpatory evidence from Lemons. The judge further found that the *Brady* violations were material to the outcome of the proceedings and granted Lemons a new trial. Accordingly, we find that the issue of whether a *Brady* violation occurred, the identical issue, was actually litigated by the same parties, was directly determined, and was essential to the judgment in the prior action. We further note

that due process does not bar collateral estoppel in this case because it certainly could be foreseen that the issue would subsequently be utilized collaterally.

{¶ 44} Next, the state argues that in the very first case written by the Ohio Supreme Court interpreting R.C. 2743.48, it found, "the qualitative differences between civil and criminal proceedings, * * * militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." *Walden*, 47 Ohio St.3d at 52, 547 N.E.2d 962. We previously addressed this point when discussing the Tenth District's decisions in *Ellis*, 10th Dist. Franklin No. 87AP-1099, 1988 Ohio App. LEXIS 2538, and *Walden*, 10th Dist. Franklin No. 87AP-1026, 1988 Ohio App. LEXIS 2456.

{¶ 45} It is worth noting, however, that the Ohio Supreme Court's decision in *Walden,* 47 Ohio St.3d at 51, 547 N.E.2d 962*,* only reinforces our analysis and conclusion regarding this issue. The Supreme Court explained that "[a]s a general rule, a verdict or judgment of acquittal in a criminal trial is a determination that the state has not met its burden of proof on the essential elements of the crime. It is not necessarily a finding that the accused is innocent." *Id.* at 51. The court stated, "This is why the General Assembly intended in R.C. 2305.02 and 2743.48(A)(4) that a claimant must first affirmatively prove her innocence by a preponderance of the evidence." *Id.* at 52.

{¶ 46} As we previously stated, this case is distinguishable because Lemons is not trying to prove that he was actually innocent of the crimes. Rather, he is

relying on an "error in procedure" that the General Assembly has explicitly stated includes a *Brady* violation.

{¶ 47} The state further argues that the plain language of R.C. 2743.48(B)(1) rejects any "collateral estoppel" applicability. This provision states:

> (1) A person may file a civil action to be declared a wrongfully imprisoned individual in the court of common pleas in the county where the underlying criminal action was initiated. That civil action shall be separate from the underlying finding of guilt. Upon the filing of a civil action to be determined a wrongfully imprisoned individual, the attorney general shall be served with a copy of the complaint and shall be heard.

{¶ 48} The state claims that the language in R.C. 2743.48(B)(1), "That civil action shall be separate from the underlying finding of guilt[,]" means that "Lemons starts on a blank slate in his civil case with respect to his purported *Brady* violations he claims happened in his murder case." We disagree with the state's interpretation of R.C. 2743.48(B)(1) because there was no "underlying finding of guilt" in this case due to the fact that Lemons is requesting to be declared a wrongfully imprisoned individual due to an "error in procedure." Thus, R.C. 2743.48(B)(1) does not require Lemons to relitigate the matter of whether a *Brady* violation occurred. He already did that. And this court agreed with the criminal trial judge's conclusion. *See Lemons*, 2017-Ohio-8584, 100 N.E.3d 871, at ¶ 109 – 112. Moreover, the legislature clearly intended for a claimant to meet the requirements of a wrongfully imprisoned individual when a *Brady* violation occurs.

{¶ 49} Finally, the state asserts that R.C. 2743.48(B)(1) must be read in pari materia with R.C. 2743.48(A)(5). But this is only relevant where a statute is

ambiguous, and we find no ambiguity here. *See State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.*, 32 Ohio St.3d 24, 27-28, 512 N.E.2d 332 (1987), citing *Hough v. Dayton Mfg. Co.*, 66 Ohio St. 427, 434, 64 N.E. 521 (1902) (in pari materia only applies "where some doubt or ambiguity exists in the wording of a statute").

{¶ 50} We therefore find no merit to the four sub-issues raised by the state regarding whether the trial court was required to relitigate the Brady violation. Thus, we find no error in the trial court's decision to "import" the criminal trial judge's finding that a *Brady* violation occurred into its analysis.

### C. *Brady* Violation

{¶ 51} The state's remaining issues are whether the information concerning Lemons's Nike shoes was orally disclosed to defense counsel and whether a material *Brady* violation occurred. We do not need to reach these issues, however, because we agree with the trial court that these issues have already been litigated and determined. The criminal trial judge found the *Brady* violation to be material, and we agreed. *See Lemons*, 2017-Ohio-8584, 100 N.E.3d 871, at ¶ 109 – 112. And with respect to whether the state orally informed defense counsel about the shoes, defense counsel stated that he "knew about the shoes but that the May 29, 1995 report about Detective Kovacic contacting Nike Corporation was not disclosed to" him. Thus, although he testified that he knew about the shoes, he did know about the part that made it exculpatory. Accordingly, we find no merit to the state's final two issues.

**D. Dicta and Mandate**

{¶ 52} One final note relating to two issues raised only in the state's reply brief. The state contends that this court's comments at ¶ 109 – 112 in *Lemons* were merely dicta and thus, the trial court erred when it relied on those comments in determining that a material *Brady* violation occurred. The state also contends in its reply brief that the trial court misconstrued our mandate.

{¶ 53} We agree that our comments in those paragraphs were dicta because the issue of whether a *Brady* violation occurred was not before us on appeal in *Lemons.* That does not change the fact that this issue was already litigated and determined. Moreover, we remanded for the trial court to allow Lemons to amend his complaint to include the "error in procedure" claim under R.C. 2743.48(A)(5). This included a determination by the trial court of whether an ongoing *Brady* violation amounted to an "error in procedure" that occurred "subsequent to sentencing or during and subsequent to imprisonment." *Id.* at ¶ 146. We did not remand for the trial court to determine whether a *Brady* violation occurred. It just so happened that before the trial court could answer the question of whether an ongoing *Brady* violation amounted to an "error in procedure" that occurred "subsequent to sentencing or during and subsequent to imprisonment," the General Assembly answered the question.

{¶ 54} Accordingly, we overruled the state's sole assignment of error.

**E. Response to Dissent**

{¶ 55} The dissent disagrees with the trial court and this opinion that an "error in procedure" resulted in Lemons's release from prison. According to the dissent, the "error in procedure set into motion the events that culminated in Lemons's release," but "it did not, in and of itself, 'result in' his release." The dissent does not believe that an individual who was released from prison due to a *Brady* violation should be compensated when a new trial "could not go forward solely due to the death of a main witness." A plain reading of the wrongful imprison statute as enacted by H.B. 411 belies the dissent's assertions.

{¶ 56} The relevant portion of former R.C. 2743.48(A)(5) stated:

> Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release[.]

{¶ 57} The relevant portion of R.C. 2743.48(A)(5) as enacted by H.B. 411 now states:

> Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release[.]

{¶ 58} We note that the legislature amended this provision in H.B. 411 to overrule the Ohio Supreme Court's holding in *Mansaray v. State*, 138 Ohio St.3d 277, 2014-Ohio-750, 6 N.E.3d 35. Jeff Hobday, *Ohio Legislative Service Commission, Bill Analysis, H.B. 411, (As Introduced)*, 4, Nov. 7, 2017. In *Mansaray*, the Ohio Supreme Court had interpreted R.C. 2743.48(A)(5) to mean that the error

in procedure must have occurred after sentencing and during or subsequent to imprisonment. *Id.* at ¶ 12. H.B. 411 clarified that "the error may have occurred prior to, during, or after sentencing, but is discovered after sentencing or during or subsequent to sentencing." Hobday at 4. H.B. 411 also made clear that a *Brady* violation is an "error in procedure" that qualifies an individual to be declared wrongfully imprisoned. *Id.* at 3.

{¶ 59} Lemons meets the new criteria under R.C. 2743.48(A)(5). The trial court found that a *Brady* violation occurred when Lemons was still in prison for murder. Thus, the error in procedure, the *Brady* violation, was discovered subsequent to Lemons's sentencing and during his imprisonment. Moreover, the *Brady* violation occurred "prior to, during, or after [Lemons's] sentencing." Finally, the trial court granted Lemons a new trial after determining that the state's withholding of exculpatory evidence was material and violated Lemons's right to a fair trial. This resulted in Lemons's release from prison.

{¶ 60} Nowhere in R.C. 2743.48(A) does it say that a claimant cannot be a wrongfully imprisoned individual if, after a *Brady* violation is discovered and a new trial granted, the state's "main witness" dies. The statute explicitly requires only that the error in procedure, *the Brady violation*, resulted in Lemon's release from prison. The dissent is attempting to add exceptions to the statute that are not in it.

{¶ 61} Moreover, R.C. 2743.48(A)(4) was also amended in H.B. 411. Previously, this provision stated that after an individual's conviction was vacated, dismissed, or reversed,

the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

Thus, under the old law, an individual could not be declared wrongfully imprisoned if there was a possibility that the prosecuting attorney could bring another action against the claimant at some point in the future for any act associated with the original conviction.

{¶ 62} Now, however, H.B. 411 "remove[d] the criterion that the prosecutor will not appeal or refile charges with respect to the individual's conviction." Hobday, *Ohio Legislative Service Commission, Bill Analysis, H.B. 411, (As Introduced)*, at 2-3. R.C. 2743.48(A)(4) now states in relevant part that an individual can be declared a wrongfully imprisoned individual when all of the following apply: (1) there is no criminal proceeding "pending against the individual for any act associated with [the] conviction" that was vacated, dismissed, or reversed, (2) "[t]he prosecuting attorney in the case, within one year after the date of the vacating, dismissal, or reversal, has not sought any further appeal of right or upon leave of court," and (3) the prosecuting attorney, "within one  year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with that conviction[.]" R.C. 2743.48(A)(4)(a), (b), and (c).

{¶ 63} Therefore, under the new law, a person can be declared a wrongfully imprisoned individual one year after his or her conviction was vacated, dismissed,

or reversed if the three criteria under R.C. 2743.48(A)(4) are established. The dissent's logic is therefore flawed because even if the state could reprosecute Lemons for murder at some point in the future (which in this case, it cannot), he could still be declared a wrongfully imprisoned individual now.[2]

{¶ 64} We further note that the dissent's focus on the fact that Lemons could not be reprosecuted because the state's main witness, Jude Adamcik, had died goes to whether Lemons was "actually innocent" of the crime, not whether "an error in procedure occurred." But in *Lemons*, 2017-Ohio-8584, 100 N.E.3d 871, this court thoroughly described the issues that occurred at Lemons's original trial that undermined Adamcik's identification of Lemons as the one who killed Sims and attempted to kill her — including the fact that the photo array shown to Adamcik on two consecutive days "was suggestive and improper" because police chose the six individuals based on a nickname rather than on similar physical characteristics. *Id.* at ¶ 85-87. There were also several other issues and inconsistencies with Adamcik's testimony, including the fact that her description of the shooter's height and eyes did not match Lemons's and that she changed her testimony with respect to where the shooter lived (she originally stated that he lived at the Cliffview Apartments, where the shooting took place, but she later changed her story to say that he was not from the area). Again, however, for purposes of our analysis, it is not relevant

---

[2] However, if a wrongfully imprisoned individual receives compensation from the state and is later "convicted of or pleads guilty to an offense that is based on any act associated with the conviction that was vacated, reversed, or dismissed," the individual must reimburse the state for the entire sum of money paid under the prior judgment for wrongful imprisonment. *See* R.C. 2743.48(F)(5).

whether Lemons was actually innocent of the murder and other crimes as the dissent implies.

{¶ 65} Rather, the focus with respect to Lemons's claim to be declared a wrongfully imprisoned individual is whether a material *Brady* violation occurred. As we explained in *Lemons*,

> The United States Supreme Court has explained that "evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-470, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). A reasonable probability does not mean that the defendant "would more likely than not have received a different verdict with the evidence," only that the likelihood of a different result is great enough to "undermine * * * confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

{¶ 66} We noted in *Lemons* that if Lemons had known that Adamcik told police that she was certain he was the shooter because she recognized his shoes in the physical lineup, he "could have more thoroughly called Adamcik's identification of him into question." *Id.* at ¶ 111. We further reasoned, "This, along with the fact that Adamcik could not initially identify Lemons in the photo array, could have altered the outcome of Lemons's trial." We further explained:

> The United States Supreme Court has also observed that evidence impeaching an eyewitness may not be "materia" according to *Brady* if the state's other evidence is strong enough to sustain confidence in the verdict. *See United States v. Agurs*, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Here, Adamcik's testimony was the only evidence linking Lemons to the crimes. We simply cannot say that the state's other evidence in this case was so strong that it sustained confidence in the verdict.

*Id.* at ¶ 112.

**{¶ 67}** Thus, the dissent's focus the state's inability to reprosecute Lemons because Adamcik had passed away are not factors that courts should consider when determining whether an individual is a wrongfully imprisoned individual based upon an error in procedure, specifically a *Brady* violation, that occurred.

**{¶ 68}** Indeed, the Tenth District case cited by the dissent, *Hill v. State*, 10th Dist. Franklin No. 12AP-635, 2013-Ohio-1968, actually supports the conclusion that when an individual is released from prison due to a *Brady* violation, that qualifies as an error in procedure such that an individual meets the criteria of R.C. 2743.48(A)(5). The Tenth District explained that the individual is not a wrongfully imprisoned individual "simply by demonstrating that his conviction was reversed and remanded." *Id.* at ¶ 42. Rather, "the procedural errors made in [Hill's] case rest upon complete disregard for one's personal rights guaranteed by the Bill of Rights of the United States Constitution and the Ohio Constitution." *Id.* at ¶ 44. Similarly, in this case, the procedural error made in Lemons's case also violated his constitutional right to a fair trial under the Due Process Clause of the United States and Ohio Constitution. Further, the Tenth District noted that it had previously "recognized that a prosecutor's violation of *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, in failing to disclose possibly exculpatory evidence to the defendant, constituted an error in procedure for purposes of R.C. 2743.48(A)(5)." *Id.* at ¶ 48, citing *Larkins v. State*, 10th Dist. Franklin No. 09AP-140, 2009-Ohio-3242.

**{¶ 69}** Although *Larkins* was a court of claims case in the Tenth District, the case originated in Cuyahoga County. The facts of *Larkins* are instructive

here. Larkins had been granted a new trial and released from prison due to a *Brady* violation. *Larkins* at ¶ 4. The state appealed, and this court affirmed. *State v. Larkins*, 8th Dist. Cuyahoga No. 82325, 2003-Ohio-5928. The common pleas court subsequently granted Larkin's motion to dismiss the charges against him, which this court affirmed. *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90. The trial court later declared that Larkins was a wrongfully imprisoned individual due to the state agreeing that he had been "released as the result of an error in procedure." *Larkins*, 10th Dist. Franklin No. 09AP-140, 2009-Ohio-3242, ¶ 6. In 2011, the state of Ohio paid Larkins a sum of $510,000 for wrongfully serving over 20 years in prison. *See* https://www.cleveland.com/metro/2017/01/ohios_33_wrongfully_convicted.html (accessed December 7, 2020).

{¶ 70} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

RAYMOND C. HEADEN, J., CONCURS;
FRANK D. CELEBREZZE, JR., J., DISSENTS WITH SEPARATE OPINION ATTACHED

FRANK D. CELEBREZZE, JR., J., DISSENTING:

{¶ 71} I respectfully dissent from the majority opinion. I would reverse the judgment of the trial court granting summary judgment to Lemons and denying the state's cross-motion, because I believe the trial court's determination that Lemons was wrongfully imprisoned does not comport with the intent and meaning of the statute.

{¶ 72} In adjudicating Lemons's claim that he was wrongfully imprisoned, the trial court determined that the Brady violation "plainly led" to his release because the prior trial judge, in granting Lemons a new trial, noted that the *Brady* violation resulted in Lemons's conviction being overturned and a new trial ordered. Lemons was ultimately released when the state was unable to go forward with its case due to the death of its main witness.

{¶ 73} I believe that the intent of the wrongful imprisonment statute is that the claimed error in procedure must have a direct, causal relationship to the individual's release. The Tenth District Court of Appeals has also analyzed the

statute in this manner. *See Hill v. State*, 10th Dist. Franklin No. 12AP-635, 2013-Ohio-1968 , *rev'd on other grounds*, 139 Ohio St.3d 451, 2014-Ohio-2365, 12 N.E.3d 1203. The *Hill* court noted that:

> An individual relying on the procedural-error prong of R.C. 2743.48(A)(5) must establish more than that his or her conviction was reversed and the case remanded. This is due, however, not to the "error in procedure" language of the statute but, rather, due to the language that modifies that phrase—only errors in procedure that *resulted in the individual's release* satisfy subsection (A)(5).

(Emphasis added.) *Id.* at ¶ 42.

{¶ 74} In evaluating whether the error in procedure claimed by Hill "resulted in his release," the Tenth District focused on the fact that successful prosecution was effectively precluded because the error in procedure affected the evidence that the state would utilize to retry Hill. The court found that "there was a direct causal relationship between the procedural error of the police in obtaining the critical evidence against Hill and the ultimate dismissal of the criminal charges against him." *Id.* at ¶ 43.

{¶ 75} The trial court in *Hill* had analyzed the word "resulted" in the statute and determined that "[t]he plain meaning of the term 'resulted' connotes causation: the error in procedure must be causally connected to the individual's freedom such that the only reasonable result of the error must be release." *Hill v. State*, Franklin C.P. No. 11 CV 10039, 2012 Ohio Misc. LEXIS 4851, 25 (July 18, 2012).

{¶ 76} The Tenth District agreed with the trial court's analysis of the statute, noting that "only in cases where the procedural error 'vitiates the basis for all

criminal liability,' would an error in procedure result in the individual's release." *Hill*, 2013-Ohio-1968, at ¶ 44, quoting *Hill*, Franklin C.P. No. 11 CV 10039, 2012 Ohio Misc. LEXIS 4851, at 27.

{¶ 77} In the instant matter, while the error in procedure set into motion the events that culminated in Lemons's release, it did not, in and of itself, "result" in his release. The state was unable to go forward with the retrial of Lemons because its main witness had died. Consequently, there is not a direct, causal relationship between the Brady violations and Lemons's ultimate release, and I believe Lemons therefore was not "wrongfully imprisoned" under R.C. 2743.48.

{¶ 78} I do not believe that the facts of this case constitute the type of situation the legislature envisioned when drafting and amending the wrongful imprisonment statute. Compensating the wrongfully imprisoned is certainly a laudable goal; however, an error in procedure leading to a new trial that ultimately could not go forward solely due to the death of a main witness should not yield a potential multi-million-dollar windfall to a defendant. A simple twist of fate should not reward Lemons so exorbitantly, particularly at the taxpayers' expense, and I do not believe we should set such a precedent here.

{¶ 79} Respectfully, I would reverse the judgment of the trial court and find in favor of the state on Lemons's claim.